**In re GRAND JURY INVESTIGATION OF OCEAN TRANSPORTATION,** Appellant.

No. 78–1539.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 9, 1979.

Decided March 28, 1979.

Rehearing Denied March 11, 1979.

Certiorari Denied Oct. 15, 1979.
See 100 S.Ct. 229.

Appeal from the United States District Court for the District of Columbia (D.C. Miscellaneous No. 76–0162).

John C. Fricano, Washington, D.C., with whom John M. Nannes and C. Benjamin Crisman, Jr., Washington, D.C., were on the brief, for appellant.

John J. Powers, III, Atty., Dept. of Justice, Washington, D.C., with whom J. Mark Manner, Atty., Dept. of Justice, Washington, D.C., was on the brief, for appellees.

Before TAMM and ROBINSON, Circuit Judges and GERHARD A. GESELL *, United States District Judge for the United States District Court for the District of Columbia.

Opinion Per Curiam.

PER CURIAM:

The District Court denied a motion of Sea-Land Services, Inc. ("Sea-Land") for the return of various documents which Sea-Land alleges are protected by the attorney-client privilege but which were inadvertently disclosed to the Antitrust Division of the

United States Department of Justice in the course of responding to a grand jury *duces tecum* subpoena. Sea-Land appeals. In response, the Government questions this Court's jurisdiction and asserts that, in any event, the District Court's order must be sustained because any privilege that existed as to these documents has been effectively waived. Accepting jurisdiction, we affirm.

I.

■ The Government contends that the order of the District Court is purely interlocutory, representing only a phase of a larger proceeding and that the holding in *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), bars review at this stage. When Sea-Land sued in the District Court, however, it had not for some time enjoyed possession of the documents. Consequently, it could not have pursued the traditional route for contesting the order by standing in contempt.[1] Therefore, the rationale of *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), not of the *Cobbledick* case, applies. *See Cobbledick v. United States, supra*, 309 U.S. at 328–29, 60 S.Ct. 540; *Nixon v. Sirica*, 159 U.S.App.D.C. 58, 79, 487 F.2d 700, 721 n.100 (D.C. Cir. 1973) (en banc).

The present appeal also fits within the standards established by the Supreme Court for the review of "collateral" orders under 28 U.S.C. § 1291. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468–69, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *Abney v. United States*, 431 U.S. 651, 656–62, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 169–72, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The District Court's order conclu-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The District Court ordered Mr. Halloran, an officer of Sea-Land, to testify as to the allegedly privileged documents. The Government maintains that the contempt route remained open since Sea-Land could have required Mr. Halloran to stand in contempt rather than testi-

fy. This claim must fail. That order ran against the employee, not against the company. Moreover, the officer was represented by his own counsel and, at least from the record, appears to have been unwilling to risk a contempt citation for Sea-Land's benefit. In these aspects, this case differs from *Shattuck v. Hoegl*, 523 F.2d 509, 512–13, 516 (2d Cir. 1975).

sively determined the question of waiver. Nothing in the record suggests that the District Court regarded its ruling as either tentative or incomplete. Such further proceedings as will be conducted by the Justice Department in this case will also not be likely to develop any factual issue relevant to the attorney-client issue now before this Court. *See United States v. MacDonald*, 435 U.S. 850, 858–59, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978). Secondly, appellate review will resolve an important issue completely separate from and collateral to the merits of the ongoing grand jury proceeding. *See United States v. Alexander*, 428 F.2d 1169, 1171 (8th Cir. 1970); *Coury v. United States*, 426 F.2d 1354, 1355 (6th Cir. 1970); *Goodman v. United States*, 369 F.2d 166, 167–68 (9th Cir. 1966); *Gottone v. United States*, 345 F.2d 165 (10th Cir.), *cert. denied*, 382 U.S. 901, 86 S.Ct. 234, 15 L.Ed.2d 155 (1965). No criminal trial is pending, *see DiBella v. United States*, 369 U.S. 121, 131–32, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); *In re Grand Jury Empaneled January 21, 1975*, 536 F.2d 1009, 1011 n.1 (3d Cir. 1976); *In re Investigation Before April 1975 Grand Jury*, 174 U.S.App. D.C. 268, 273, 531 F.2d 600, 605 n.8 (D.C. Cir. 1976); nor is any delay or obstruction of the grand jury proceeding threatened by the instant appeal. Finally, Sea-Land must pursue its claim of attorney-client privilege at this time in order to ensure that its claim not later become moot by reason of the documents' disclosure to third parties. Absent the present appeal, these documents could be read or shown in the course of the grand jury proceedings to witnesses who would then be free under Fed.R.Crim.P. 6(e) to disclose them. Barring an appeal at this stage might therefore subject Sea-Land to the irreparable loss of its right to claim the attorney-client privilege. Practical rather than technical considerations must control in this area. *Cohen v. Beneficial Industrial Loan Corp., supra*, 337 U.S. at 546, 69 S.Ct. 1221. Accordingly, we hold that jurisdiction to review the District Court's final order lies under 28 U.S.C. § 1291. Thus the issue of waiver is squarely presented.

## II.

A brief recital of the facts is all that is necessary. It is undisputed that the United States has acted from the outset in complete good faith. Upon receipt of the subpoena in August 1976, Sea-Land instructed its counsel ("original counsel") to withhold from production all documents which were felt might be covered by the attorney-client privilege. On September 30, 1976, said counsel responded to the subpoena and turned over two groups of documents which Sea-Land's current counsel are now claiming were protected by the privilege.

One group need not detain us any further. For whatever reason, original counsel did not mark these papers as potentially privileged and voluntarily turned them over. This must be deemed a complete waiver. Original counsel's responsibility was to determine the privileged status of Sea-Land's documents. Its decisions in this regard were binding on its client. Privilege claims cannot be reopened by retaining new counsel who read the privilege rules more broadly than did their predecessor.

The second group of documents was marked by original counsel with a "P." When the Antitrust Division received them it thought something might be amiss and promptly asked original counsel whether the set had been disclosed by mistake. Counsel investigated and explicitly, even though mistakenly, advised that the documents were intended to be disclosed and that no privilege was accordingly claimed. It was not until March 1977 that original counsel discovered their mistake, so advised the Antitrust Division, and indicated that a formal demand for return would be forthcoming. No such demand was made, however, until early 1978 after new counsel had been retained by Sea-Land. Sea-Land itself was first advised of the inadvertent disclosure in December of 1977. Since September 1976, the documents have been copied, digested and analyzed by the Antitrust Division, as well as periodically used in connection with the grand jury investigation.

Several witnesses have been asked questions concerning the documents, including Mr. Halloran, a high official of Sea-Land who was represented by personal counsel and testified with respect to the documents pursuant to a related order of the District Court.

Assuming that these documents were in fact privileged prior to their disclosure to the Government—an issue not before this Court—it is clear that the mantle of confidentiality which once protected the documents has been so irretrievably breached that an effective waiver of the privilege has been accomplished. Because of the privilege's adverse effect on the full disclosure of the truth, it must be narrowly construed. *Underwater Storage, Inc. v. United States Rubber Co.,* 314 F.Supp. 546, 547 (D.D.C. 1970). An intent to waive one's privilege is not necessary for such a waiver to occur. *Id.,* at 549; *Daniels v. Hadley Memorial Hospital,* 68 F.R.D. 583, 587 (D.D.C.1975). "A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation. There is always the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not." 8 Wigmore, Evidence § 2327 (McNaughton rev. 1961). *See* McCormick, Evidence § 93 (Cleary ed. 1972). Moreover, "[a]ll involuntary disclosures, in particular, through the loss or theft of documents from the attorney's possession, are not protected by the privilege, on the principle . . . that . . . the law . . . leaves to the client and attorney to take measures of caution sufficient to prevent being overheard by third persons. The risk of insufficient precautions is upon the client." 8 Wigmore, Evidence § 2325 (McNaughton rev. 1961). *See United States v. Kelsey-Hayes Wheel Co.,* 15 F.R.D. 461, 464–65 (E.D.Mich.1954). Perhaps this latter rule should not be strictly applied to all cases of unknown or inadvertent disclosure; this, however, is not a case where any such exception would be appropriate. Here, the disclosure cannot be viewed as having been inadvertent in all respects. Original counsel knew that some papers marked "P" had been divulged. This production was brought to their attention on at least one occasion; each time, however, said counsel declined to assert the privilege. Similarly, the Government cannot be said in any way to have "compelled" Sea-Land or original counsel to produce privileged documents; and there certainly was here an adequate opportunity in September 1976 to claim the privilege. *Cf., Transamerica Computer Co. v. IBM,* 573 F.2d 646, 651–52 (9th Cir. 1978).

To be sure, in the final analysis, the privilege is for the client, not the attorney, to assert. McCormick, Evidence § 92 (Cleary ed. 1972). Original counsel, however, acted as Sea-Land's agent in determining which documents would be produced pursuant to the subpoena and which documents would be withheld under the attorney-client privilege. Original counsel acted within the scope of authority conferred upon it, and Sea-Land may not now be heard to complain about how that authority was exercised.

Most importantly, it would be unfair and unrealistic now to permit the privilege's assertion as to these documents which have been thoroughly examined and used by the Government for several years. *See Underwater Storage Co. v. United Rubber Co., supra,* 314 F.Supp. at 549; *United States v. Kelsey-Hayes Wheel Co., supra,* 15 F.R.D. at 464–65. The Government attorneys' minds cannot be expunged, the grand jury is familiar with the documents, and various witnesses' testimony regarding the papers has been heard. This is not a case of mere inadvertence where the breach of confidentiality can be easily remedied. Here, the disclosure cannot be cured simply by a return of the documents. The privilege has been permanently destroyed.

*Affirmed.*