PUBLIC COPY – SEALED INFORMATION DELETED

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 25, 2012

Decided March 5, 2013
Reissued May 16, 2013

No. 12-5147

IN RE: SEALED CASE

Consolidated with 12-5148

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-mc-00196)

Before: GARLAND, *Chief Judge*, GRIFFITH and
KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

Concurring opinion filed by *Circuit Judge* KAVANAUGH.

GRIFFITH, *Circuit Judge*:[1] FBI agents executed search
warrants ████████████████████ as part of a grand
jury investigation. Arguing to the district court that some of the

---

[1] **NOTE**: Portions of this opinion contain **Sealed Material**,
which has been redacted.

documents seized were beyond the scope of the warrants and others were protected by the attorney-client privilege, appellant moved for their return pursuant to Federal Rule of Criminal Procedure 41(g). The district court denied ▮ motion, and this appeal ensued. We dismiss this interlocutory appeal for want of jurisdiction.

I

▮▮▮▮ is the subject of an ongoing grand jury investigation ▮▮▮▮ On March 2, 2012, FBI agents executed search warrants at ▮▮▮▮ in Washington, D.C.

The agents seized more than sixty boxes of physical property, as well as computers, hard drives, cell phones, and other devices that contained electronic records. The boxes and the electronic devices contained more than twenty-three million pages of documents. Within days of the search, the government had copied and returned to ▮▮▮▮ the contents of most of the electronic devices. (It remains unclear whether several cell phones seized from ▮▮▮▮ have yet been returned. Tr. 54-55.) The government also made copies or originals of the documents available. Each party proposed protocols to identify documents the government could review without exceeding the scope of the search warrants or breaching the attorney-client privilege. When they were unable to reach an agreement, ▮▮▮▮ moved under Federal Rule of Criminal Procedure 41(g) for the return of any documents the government lacked authority to review. ▮▮▮ did not assert that ▮▮▮ had been

PUBLIC COPY – SEALED INFORMATION DELETED

denied access to documents essential for ▆ affairs. Instead, ▆▆▆▆▆▆▆▆▆▆ urged the adoption of protocols ▆ had proposed on the grounds that the government retained documents protected from review by the Fourth Amendment and the attorney-client privilege.

On May 3, 2012, the district court denied ▆ motions, and on May 11, ▆ sought review from this court. ▆▆

▆▆. On January 14, 2013, ▆▆ and the government notified us that they had reached agreement on how to identify privileged material. Because we may act only to resolve "actual, ongoing controversies," *Honig v. Doe*, 484 U.S. 305, 317 (1988), we dismiss as moot the portion of ▆▆ appeal that challenged the district court's refusal to order the parties to implement the protocols ▆▆ had proposed to identify privileged documents. ▆▆ appeal is now limited to ▆ claim that the district court improperly declined to order the parties to implement the protocols ▆ proposed to identify documents beyond the scope of the search warrants.

II

Before we can take up the merits of ▆▆ claim, we must determine whether we have jurisdiction to hear the appeal of the denial of ▆ Rule 41(g) motions. Under 28 U.S.C. § 1291, Congress has limited our jurisdiction to appeals of final decisions of the district court — a policy that requires most litigants to await the termination of their cases before seeking appellate review. This limit aims to prevent "leaden-footed" judicial administration and avoid "the obstruction to just claims that would come from permitting the

4

**PUBLIC COPY – SEALED INFORMATION DELETED**

harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise." *Cobbledick v. United States*, 309 U.S. 323, 325 (1940). This concern with efficiency is most pronounced in criminal proceedings. *Id.* at 324-25. "[T]he delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law." *DiBella v. United States*, 369 U.S. 121, 126 (1962). Allowing review of the decisions district courts make during the course of ongoing criminal prosecutions may, for example, "make of appeal an instrument of harassment, jeopardizing by delay the availability of . . . essential evidence." *Id.* at 129. Weighed against these costs, the value of an immediate appeal is diminished because there is likely to be "an adequate remedy at law by motion in the [forthcoming] criminal trial." *Id.* at 128.

Rule 41(g) allows the owner of property the government has seized in a search to seek its return.[2] Sometimes, the government has seized the property for the purposes of a criminal investigation or prosecution that is ongoing when the motion is filed. Even if assigned its own docket number in the district court,[3] that motion is likely a "component element[] in

---

[2] Prior to 1989, only an unlawful search or seizure could trigger the rule, which provided for automatic suppression of any property returned. *See In re Warrant Dated Dec. 14, 1990*, 961 F.2d 1241, 1243 n.4 (6th Cir. 1992) (describing the 1989 amendment). After the 1989 amendment to Rule 41, that restriction is gone. *See* FED. R. CRIM. P. 41(g). Accordingly, ███████████████████ not contested the lawfulness of the government's search or seizure.

[3] Because the grand jury has not yet returned an indictment against ████████, no criminal number exists for ██ case. Instead, ██ motions were assigned miscellaneous numbers.

5

a unified [criminal case]," *Cobbledick*, 309 U.S. at 325, rather than an "independent proceeding begetting finality . . . for purposes of appealability." *DiBella*, 369 U.S. at 131. We threaten to disrupt "the conduct of a criminal trial" when we permit appeals from these motions. *Id.* at 129. For that reason, an appellant seeking review of the denial of a Rule 41(g) motion must show that the decision is independent of any ongoing criminal prosecution, such that its appeal will not lead to piecemeal review of a unified criminal case or impede the progress of the prosecution.

In *DiBella v. United States*, the Supreme Court announced a test to determine whether a Rule 41(g) proceeding is independent of a criminal prosecution. 369 U.S. at 131-32. *DiBella* consolidated appeals of conflicting decisions from the Second and Fifth Circuits. In the appeal from the Second Circuit, Mario DiBella had been arrested pursuant to a warrant issued upon a complaint charging unlawful sales of narcotics. *Id.* at 122. After his arrest but before his indictment, DiBella moved under the predecessor to Rule 41(g) to suppress evidence he claimed was unlawfully seized at the time of his arrest. *Id.* Shortly after DiBella filed his motion, the grand jury returned an indictment, and the district court denied his motion without prejudice to a motion to suppress at trial. *Id.* The Second Circuit permitted his appeal because the motion was filed before the indictment was returned. *Id.* at 122-23. In the appeal from the Fifth Circuit, Daniel Koenig was arrested and his property was seized in the Southern District of Florida on a complaint charging a bank robbery in the Southern District of Ohio. *Id.* at 123. Four days after Koenig filed a motion to suppress and for return of property in Florida, a federal grand jury in Ohio returned an indictment against him. *Id.* The District Court for the Southern District of Florida granted

PUBLIC COPY – SEALED INFORMATION DELETED

suppression of the evidence but denied Koenig its return. *Id.* The government appealed, and the Fifth Circuit dismissed the appeal on the ground that the order was interlocutory and therefore not appealable.[4] *Id.*

The Supreme Court held that a court of appeals could entertain the denial of a motion for the return of seized property "[o]nly if the motion is solely for return of property and is in no way tied to a criminal prosecution *in esse* [5] against the movant." *Id.* at 131-32. The Court concluded that the movant failed both prongs in each case. The movant's goal was not "solely . . . return of property," but the suppression of evidence at an upcoming trial. *Id.* Far from being independent of the trial, each motion was an integral part of a trial strategy. *Id.* at 127 (holding that a motion to suppress "presents an issue that is involved in and will be part of a criminal prosecution in process at the time the order is issued"). The Court reasoned that it could not treat a motion as "independent" when its "disposition . . . 'will necessarily determine the conduct of the trial and may vitally affect the result.'" *Id.* (quoting *Cogen v. United States*, 278 U.S. 221, 223 (1929)). The Court also found that each motion was "tied to a criminal prosecution *in esse*" because both movants had been arrested and indicted at the time of appeal. *DiBella*, 369 U.S. at 131-32. When a criminal prosecution is *in esse* — or when it is "in being" — the "delays and disruptions attendant upon intermediate appeal" jeopardize "the effective and fair administration of the criminal law." *Id.* at 126. In short, the orders were not final. They were

---

[4] Today, a statute permits the United States to appeal orders granting Rule 41(g) motions. *See* 18 U.S.C. § 3731.

[5] *In esse* is defined as "[i]n actual existence" or "in being." BLACK'S LAW DICTIONARY 846 (9th ed. 2009).

7

PUBLIC COPY – SEALED INFORMATION DELETED

inextricably intertwined with issues that would be more fully developed at trial, and allowing their appeal would disrupt an ongoing criminal proceeding.

███████████ Rule 41(g) motions are not independent. Instead, they are part of a strategy of how best to respond to a grand jury investigation. ████████ argues ██ motions are "solely for return of property" because ██ does not seek the suppression of evidence gathered from the documents. Appellant's Reply Br. 3-4. In so arguing, ████████ seems to assume that every Rule 41(g) motion falls into one of two categories: motions that seek "solely" return of property, and those that seek return of property *and* suppression of evidence. But at the time the Court decided *DiBella*, the dichotomy ████████ imagines did not exist: granting a Rule 41(g) motion *automatically* resulted in suppression of the returned evidence.[6] Thus, ████████ cannot be right that the test for whether a motion is "solely for return of property" turns on whether the motion also seeks suppression. The Court's objective in crafting the first prong was to distinguish some motions from others: those that are inextricably intertwined with issues to be developed at a forthcoming trial from those that are not. If ████████ were correct about its meaning, then the first prong would not have served the Court's desired culling function because seeking the return of property went hand-in-glove with seeking its suppression. *See In re Warrant Dated Dec. 14, 1990*, 961 F.2d 1241, 1243-44 (6th Cir. 1992) ("[N]o motion . . . could ever literally comply with the [first prong because] any motion for return of property was automatically treated as a suppression motion as well."

---

[6] Rule 41 has since been amended and does not automatically result in suppression. *See supra* note 2.

8

PUBLIC COPY – SEALED INFORMATION DELETED

(internal quotation marks omitted)). Sensitive to this peril, courts of appeals have instead interpreted *DiBella* to stand for a broader principle than ███████ acknowledges — one that requires us to look beyond the mere effect of the motion to ascertain its true purpose. *See, e.g., id.* ("[W]e must look behind the . . . motion and determine whether the motion essentially sought return of seized property or suppression, delay, or some other such purpose apart from the return of the property."); *Matter of 949 Erie Street, Racine, Wis.*, 824 F.2d 538, 541 (7th Cir. 1987); *In re Grand Jury Proceedings*, 716 F.2d 493, 495 (8th Cir. 1983); *Imperial Distribs., Inc. v. United States*, 617 F.2d 892, 895 (1st Cir. 1980); *United States v. Premises Known as 608 Taylor Ave.*, 584 F.2d 1297, 1300 (3d Cir. 1978).

The question is more fundamental than whether the movant seeks only to suppress evidence. The question is whether a Rule 41(g) motion is being used for strategic gain at a future hearing or trial. Our sister circuits have identified factors probative of purpose. For example, many have considered the movant's need for the property. As such, when the movant has already recovered the property from the government, those courts are reluctant to find that the motion is "solely" for its return. *See, e.g., In re Grand Jury*, 635 F.3d 101, 104-05 (3d Cir. 2011); *Matter of 949 Erie Street*, 824 F.2d at 541; *Imperial Distribs.*, 617 F.2d at 895-96. Courts have also considered whether granting the motion would have some effect on the presentation of evidence at a future hearing or trial. *See, e.g., In re Grand Jury*, 635 F.3d at 104 (holding that a Rule 41(g) motion was actually a motion to suppress because it "request[ed] . . . any *copies* of the seized documents and . . . an order directing the government to cease inspecting the evidence pending a ruling" (emphasis in original)); *In re 3021*

9

*6th Ave. North*, 237 F.3d 1039, 1041 (9th Cir. 2001); *Imperial Distribs.*, 617 F.2d at 896.

On both of these counts, ██████████ motions are not "solely for return of property." ██ has made no argument that ██ has some need for the seized property. We think it significant that the government has already made almost all of ████████████ property available to ██, and it has expressed a willingness to return at least *copies* of any documents it retains. It is also telling that the injury ██████████ asserts is not the deprivation of property but the unlawful revelation of ██ private information. ██████████ preoccupation with disclosure rather than return underscores that ██ invocation of Rule 41(g) is not about securing ██ property's return. *See United States v. Ryan*, 402 U.S. 530, 533 (1971) (describing the interest at stake when a motion is "solely for return of property" as the "right to possession").

To be sure, ██████████ motions do not, by their terms, seek suppression of evidence. Granting them, however, would have a profound effect on the presentation of evidence at a future hearing or trial. For example, ██████████ motions include a request that the district court require the government to waive the plain view doctrine with respect to the electronic documents. [7] If ██████████ motions were granted, the government could not use *any* electronic evidence outside the scope of the warrant at trial — even evidence in plain view during the search of the device on which the evidence was

---

[7] The plain view doctrine permits the seizure of evidence outside the scope of the warrant discovered during the course of a lawful search, provided its criminal nature is immediately apparent. *See Horton v. California*, 496 U.S. 128, 135-36 (1990).

10

PUBLIC COPY – SEALED INFORMATION DELETED

stored. That would be a benefit to ███████ at trial, and it has nothing to do with the return of property. ███████ motions are strategic in another way, too. ██ seeks to prevent the government from reviewing all or most of the evidence for a period of time, while ███████, and an independent third party screen the seized material. Tr. 13. By "jeopardizing . . . the availability of other essential evidence," *DiBella*, 369 U.S. at 129, the delay could shape the course of the criminal investigation and the content of the case the government will present at trial. In these ways, ███████ motions for return of property are designed to achieve more than "solely" the return of property. Rather, they are an integral part of ██ strategy before the grand jury and at a possible trial.

Because ███████ motions fail the first prong of the *DiBella* test, we need not consider whether they are also "tied to a criminal prosecution *in esse* against" ███████. ██ Rule 41(g) motions below were not independent proceedings, and the district court's order denying those motions is not final.

### III

Congress and the courts have fashioned exceptions to the finality rule, *see DiBella*, 369 U.S. at 124-26, and ███████ invokes one of them to argue that we have jurisdiction to review the district court's denial of ██ Rule 41(g) motions.

The *Perlman* doctrine permits appeals from some decisions that are not final but that allow the disclosure of property or evidence over which the appellant asserts a right or privilege. The doctrine originates in the Supreme Court's decision in *Perlman v. United States*, 247 U.S. 7 (1918). Louis Perlman owned several exhibits that his company, Perlman

PUBLIC COPY – SEALED INFORMATION DELETED

Rim Corporation, used during its patent suit against Firestone Tire & Rubber Company. *Id.* at 8. At the close of the trial, the district court ordered all exhibits impounded in the custody of the clerk, pending an investigation into perjury Perlman may have committed at trial. *Id.* at 8-9. The court then ordered the two companies to show cause why the exhibits should not be turned over to a federal prosecutor. *Id.* at 9. Because neither party objected, the court directed the clerk to grant the federal prosecutor access to the exhibits. *Id.* at 9-10. Perlman, who was not a party to the patent suit and did not receive notice of the order to show cause, subsequently sought an order restraining the government from using the exhibits. *Id.* at 9-11. He argued that their disclosure to the government had violated his Fourth and Fifth Amendment rights. *Id.* at 13. He lost, but appealed the denial of his petition to the Supreme Court, which heard the case under its then-obligatory appellate jurisdiction. *Id.* at 11. Sometime before his appeal reached the Supreme Court, Perlman was indicted for perjury. *Id.* The government opposed Perlman's appeal, arguing that the district court's decision was "part of a criminal proceeding," and "not final, but merely interlocutory, and therefore not reviewable by this court." *Id.* at 12.

In a brief paragraph, the Supreme Court rejected the government's argument, calling it "somewhat strange," and warning that, if adopted, it would render "Perlman . . . powerless to avert the mischief of the order" and would require him to "accept its incidence and seek a remedy at some other time and in some other way." *Id.* at 12-13. In that language, which Judge Friendly would later describe as "Delphic," *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 591 F.2d 174, 178 (2d Cir. 1979), ██████ grounds █

12

PUBLIC COPY – SEALED INFORMATION DELETED

argument that we have jurisdiction to consider the district court's denial of ▮ Rule 41(g) motions.

It is not clear to us from the filings whether ▮ still thinks the *Perlman* doctrine provides jurisdiction for ▮ appeal now that the dispute over the attorney-client privilege is moot. Apart from *Perlman* itself, all of the cases ▮ cites concern privileges, rather than Fourth Amendment rights. In any event, we rest our disposition not on the nature of the rights or privileges ▮ asserts, but on the conclusion that the *Perlman* doctrine cannot be stretched to cover appeals from denials of Rule 41(g) motions. ▮ points us to no court that has relied upon *Perlman*'s "Delphic" language to permit an appeal from the denial of a Rule 41(g) motion, and we will not be the first to do so.

Typically, *Perlman* permits a privilege-holder to appeal a disclosure order "directed at a disinterested third party . . . because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 18 n.11 (1992) (citing *Perlman*); *see also United States v. Williams Companies, Inc.*, 562 F.3d 387, 392 (D.C. Cir. 2009).[8] Few courts have departed from this formula, as

---

[8] Every other circuit has invoked a similar formulation. *See In re Grand Jury*, Nos. 12-1697 & 12-2878, 2012 U.S. App. LEXIS 25318, *20 (3d Cir. Dec. 11, 2012); *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 485 (10th Cir. 2011); *Wilson v. O'Brien*, 621 F.3d 641, 642-43 (7th Cir. 2010); *United States v. Krane*, 625 F.3d 568, 573 (9th Cir. 2010); *United States v. Myers*, 593 F.3d 338, 345 (4th Cir. 2010); *John B. v. Goetz*, 531 F.3d 448, 458 n.6 (6th Cir. 2008); *In re Air Crash at Belle Harbor*, 490 F.3d 99, 106 (2d Cir. 2007); *Gill v. Gulfstream Park Racing Ass'n*, 399

13

████████ urges us to do in order to find jurisdiction over █ appeal. ████████ relies on two cases to press █ argument that the *Perlman* doctrine is more flexible than the formula suggests. According to ██, the doctrine permits interlocutory appeals whenever the holder of a right put in jeopardy by a court's order cannot defy its command and appeal the resulting contempt citation. In *In re Grand Jury Investigation of Ocean Transportation*, we considered a motion for return of privileged documents that Sea-Land Services, Inc., had mistakenly turned over to the grand jury in response to a subpoena.[9] 604 F.2d 672, 673 (D.C. Cir. 1979) (per curiam). We found jurisdiction on "the rationale of *Perlman*," reasoning that Sea-Land "had not for some time enjoyed possession of the documents [and] could not have pursued the traditional route for contesting the order [denying its motion] by standing in contempt." *Id.* ████████ argues that this language demonstrates that *Perlman* applies not only to disclosure orders, but also to motions for return of property. In *In re Berkley & Co., Inc.*, the Eighth Circuit recognized its jurisdiction over an appeal from an order that directed the disclosure to the grand jury of certain seized documents over which the appellant asserted the attorney-client privilege. 629 F.2d 548, 549-51 (8th Cir. 1980). The court chose to treat the order as "the functional equivalent of an order denying a

---

F.3d 391, 397-98 (1st Cir. 2005); *In re Grand Jury Subpoena*, 190 F.3d 375, 382-83 (5th Cir. 1999); *In re Grand Jury Proceedings*, 142 F.3d 1416, 1420 n.9 (11th Cir. 1998); *In re Grand Jury Subpoenas Duces Tecum*, 85 F.3d 372, 374-75 (8th Cir. 1996).

[9] Although it sought return of property, the motion was not a Rule 41(g) motion. Rule 41(g) provides only for return of *seized* property, not all property in government custody.

14

**PUBLIC COPY – SEALED INFORMATION DELETED**

motion to quash a grand jury subpoena." *Id.* at 551. Acknowledging that the *Perlman* doctrine applies to appeals from subpoenas, the Eighth Circuit reasoned that the relatively unique order fell "within the rationale of the *Perlman* doctrine." *Id.* ██████████ acknowledges that neither *Ocean Transportation* nor *In re Berkley* involved Rule 41(g) motions, but █ reasons that, together, these decisions support extending the *Perlman* doctrine to motions for return of seized property.

We disagree. These two isolated, decades-old decisions involved unique circumstances. Both we and the Eighth Circuit recognized the novelty of the orders and cautiously relied on "the *rationale* of *Perlman*." *In re Grand Jury Investigation of Ocean Transp.*, 604 F.2d at 673 (emphasis added); *see also In re Berkley & Co., Inc.*, 629 F.2d at 551. Most important, neither we nor the Eighth Circuit had the benefit of a jurisdictional doctrine crafted explicitly for the type of order at issue in those cases, as we do with *DiBella* in the Rule 41(g) context. Thus, earlier decisions to analogize to *Perlman* in cases that did *not* involve Rule 41(g) are not instructive to us in cases that *do*.

We hold that *DiBella* is the exclusive test for determining whether we have jurisdiction over appeals from orders denying Rule 41(g) motions. To use *Perlman* to find jurisdiction here would threaten to swallow *DiBella*'s carefully reasoned limitation on Rule 41(g) appeals. The *DiBella* test prohibits appeals after an indictment has issued. *See DiBella*, 369 U.S. at 131. By contrast, even a movant who has been indicted may be able to avail himself of the *Perlman* doctrine. *Perlman*, 247 U.S. at 9-10. Thus, extending *Perlman* to appeals from orders denying Rule 41(g) motions would allow appellate courts to exercise jurisdiction over those appeals even when the

**PUBLIC COPY – SEALED INFORMATION DELETED**

movant's attempts to recover the property are "tied to a criminal prosecution *in esse*" for the purposes of *DiBella*. Given the concerns the Supreme Court expressed about "disruption to the conduct of a criminal trial," *DiBella*, 369 U.S. at 129, we are hesitant to recognize this end-run around the jurisdictional limitations in *DiBella*.

The Supreme Court recently cautioned that "the class of collaterally appealable orders must remain 'narrow and selective in its membership.' This admonition has acquired special force in recent years with the enactment of legislation designating rulemaking, 'not expansion by court decision,' as the preferred means for determining whether and when prejudgment orders should be immediately appealable." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 130 S. Ct. 599, 609 (2009) (quoting *Will v. Hallock*, 546 U.S. 345, 350 (2006); *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 48 (1995)) (referring to the Rules Enabling Act and subsequent amendments to the Act's codified provisions); *see also id.* at 610 (Thomas, J., concurring). We would be ill-advised to expand *Perlman*'s scope because its "Delphic" language is capable of capturing a broad swathe of district court orders without the indicia of finality. The danger of applying the *Perlman* rationale too readily is that *Perlman* itself "does not wrestle with the broad policy issues [relating to finality] which perhaps had to await *Cobbledick* to be adequately disclosed." *In re Oberkoetter*, 612 F.2d 15, 18 (1st Cir. 1980), *overruled on other grounds by In re Grand Jury Subpoenas*, 123 F.3d 695, 697 (1st Cir. 1997). Appellants most commonly invoke the doctrine in the context of an ongoing grand jury investigation. 15B CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 3914.23 at 166-67 (2d ed. 1992). By permitting appeals during the pendency of these

16

investigations, an expanded *Perlman* doctrine would "interfere with the administration of the criminal law, postpone trials of matters of utmost urgency, and . . . overload crowded appellate dockets." *In re Oberkoetter*, 612 F.2d at 18. Heeding the admonition in *Mohawk*, we decline ███████ invitation to work this unprecedented extension of *Perlman*.

Because we hold that the *Perlman* doctrine does not apply to appeals from orders denying Rule 41(g) motions, it cannot afford this court jurisdiction over this appeal.

## IV

For the forgoing reasons, the appeal is *dismissed* for lack of appellate jurisdiction.

*So ordered.*

KAVANAUGH, *Circuit Judge*, concurring: I join the Court's fine opinion but note that our decision does not foreclose interlocutory appellate jurisdiction under *Perlman* when (i) the underlying action is not a Rule 41(g) motion for return of property and (ii) the party whose documents were seized raises an attorney-client privilege objection. *See In re Berkley & Co., Inc.*, 629 F.2d 548, 549-51 (8th Cir. 1980). Here, however, the attorney-client privilege issue has become moot during the pendency of the appeal. Therefore, the Court properly does not address the merits of petitioner's attorney-client privilege arguments.