# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 15, 2021

Lyle W. Cayce
Clerk

No. 19-20624

Harbor Healthcare System, L.P.,

*Plaintiff—Appellant*,

*versus*

United States of America,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-3195

Before Higginbotham, Elrod, and Haynes, *Circuit Judges*.
Per Curiam:[*]

Harbor Healthcare System, L.P., filed a pre-indictment motion under Rule 41(g) of the Federal Rules of Criminal Procedure, seeking return of documents seized by the United States in five searches of Harbor locations and offices. After exercising its discretionary equitable jurisdiction for a time to oversee the implementation of protective processes to screen Harbor's

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

privileged information, the district court declined to exercise that equitable jurisdiction further and dismissed the case. Harbor appealed, seeking reversal of the district court's decision to not reach the merits of Harbor's motion. Because we have jurisdiction to consider this appeal and because the district court erred in its assessment of the pre-indictment harm resulting from an allegedly unlawful seizure of privileged material, we REVERSE and REMAND.

## I.

Harbor became the subject of two *qui tam* lawsuits—filed in 2014 and 2016—alleging violations of the False Claims Act, 31 U.S.C. §§ 3729–3733. As part of its investigation into the allegations of those *qui tam* lawsuits, the United States Department of Health and Human Services, Office of Inspector General issued a "Request for Information" regarding certain patients from Harbor.

The Civil Division of the Department of Justice then issued a Civil Investigative Demand to Harbor in March of 2017, seeking documents and answers to interrogatories. Harbor responded to the demand in April of 2017, producing those documents and answers to the interrogatories.

Eric Sprott, Harbor's Director of Compliance, coordinated Harbor's response to the Request for Information and the Civil Investigative Demand. Sprott hired Justo Mendez—a solo practitioner and former general counsel of Harbor—as outside counsel to assist in the response to the Civil Investigative Demand. Both Sprott and Mendez communicated with attorneys in the United States Attorney's Office for the Eastern District of Texas and the Department of Justice regarding the Civil Investigative Demand.

The Department of Justice shared the allegations in the *qui tam* actions with its prosecutors to investigate possible criminal activity.

No. 19-20624

Prosecutors from the United States Attorney's Office for the Eastern District of Texas sought warrants to search Harbor locations and offices. The warrants were signed by magistrate judges from the Western District of Louisiana and the Eastern and Southern Districts of Texas. The warrants authorized seizure of twenty-two broad categories of documents dating from January 1, 2010 to May 2017 as well as "[c]ellular telephones, [s]mart phones, iPads, tablets or other mobile electronic devices used in the course of business" and stored e-mail exchanges between Harbor employees, agents, and representatives.

The government executed those search warrants on May 18, 2017. The government seized twenty-nine smartphones, twenty computers and computer hard drives, and the e-mail accounts of seventeen employees. In total, the government seized 3.59 terabytes of data and hundreds of boxes of paper records. As part of the search, the government seized Sprott's computer, e-mail account, iPhone, and all of the paper documents in his office. Harbor asserts that these materials contained a wealth of information protected by the attorney–client privilege, including recent communications with Mendez regarding the government's Civil Investigative Demand.

The government assembled a "filter team" from "another division of the Eastern District" to review the seized documents for privileged materials. At the government's request, Harbor provided a list of the names of lawyers and law-firms "who might have emailed with Harbor employees." According to Harbor, the government did not inform the magistrate judges who authorized the search warrants that the government had seized privileged material from Harbor.

Harbor repeatedly attempted, but ultimately failed, to meet with the head of the government's taint team to discuss the return of privileged documents. On September 7, 2018, Harbor filed a motion under Federal

Rule of Criminal Procedure 41(g) in the United States District Court for the Southern District of Texas. Because there was not yet any criminal proceeding against Harbor, the motion was filed as its own civil case. *See* Fed. R. Crim. P. 41(g); *Bailey v. United States*, 508 F.3d 736, 738 (5th Cir. 2007).

The government did not timely respond to Harbor's motion, so Harbor moved first for an entry of default and then for default judgment against the government. The district court scheduled a hearing on the motions. The government responded by filing a motion to transfer to the Beaumont Division of the Eastern District of Texas, where the government's criminal investigation originated and where Harbor's corporate offices are located. At the December 4, 2017 hearing, the district court denied the motions for entry of default and default judgment and declined to rule on the motion to transfer.

The district court also declined to enter a scheduling order or set deadlines for the government to screen and return privileged information. Instead, the district court encouraged the parties to test a proposed privilege-screening plan: first, the government would give Harbor information about documents seized from Sprott; second, Harbor would produce a privilege log; and third, the government would file any objections to assertions of privilege. Once this screening process was complete, the district court would review the privilege log and objections and determine how to proceed. As a test run, this screening process would be conducted only on Sprott's e-mail account but not yet on the sixteen other e-mail accounts, nor on the information from the twenty-nine smartphones and twenty computers, nor on the physical documents seized.

On February 8, 2019, the government moved to dismiss Harbor's civil case for lack of equitable jurisdiction. The government argued that Harbor

had not "demonstrate[d] any irreparable harm to its legitimate property interests" and that the Rule 41(g) motion was mooted by the privilege-screening plan. The government characterized the Rule 41(g) motion as an "improper suppression motion."

Meanwhile, Harbor identified 3,843 e-mails from Sprott's account as privileged. Harbor also received from the government a list of documents that had already been transferred from the government's filter team to its civil and criminal investigators. Based on this list, Harbor asserted in an April 2, 2019 letter to the district court that "a significant number of privileged documents" had already made their way into the hands of investigators. Harbor thus requested that the district court rule in its favor on its Rule 41(g) motion and order the government to return all seized documents to Harbor.

The district court granted the government's motion to dismiss on August 19, 2019. The district court explained that it would no longer exercise its equitable jurisdiction over Harbor's Rule 41(g) motion because it was assured that processes were in place to protect Harbor's privileged information. In its order, the district court emphasized two aspects of the government's investigation that it considered adequate to protect Harbor. First, the parties "reached a working agreement to reasonably address Harbor's assertions of privilege" through the joint privilege-screening plan. Second, "Harbor may make its arguments in a post-indictment motion to suppress, if an indictment is ultimately returned" against Harbor.

Harbor filed an emergency motion for reconsideration on August 29, 2019. The district court held a telephone conference on the motion on September 3, 2019. In that conference, Harbor expressed three main concerns about how the screening process was playing out. First, the government had not responded to Harbor's privilege designations or confirmed that it had deleted or returned privileged material. Second,

No. 19-20624

Harbor objected to the government's filter team viewing e-mails that had been flagged as privileged. Third, Harbor was concerned that the government's litigation team had already gotten access to privileged materials.

In response, the district court stated its intent to allow the government's filter team to continue reviewing material designated as privileged. The district court then denied Harbor's emergency motion for reconsideration in a written order on September 10, 2019. Harbor timely appealed.

## II.

As an initial matter, we have jurisdiction over this appeal under 28 U.S.C. § 1291. A motions panel of this court previously denied the government's motion to dismiss for lack of appellate jurisdiction. While we are not bound by the motions panel's ruling, we agree with its necessary conclusions that Harbor's motion is solely for the return of property and that a grand jury proceeding—which the government cannot even say exists[1]—is not a "prosecution *in esse.*" *See DiBella v. United States*, 369 U.S. 121, 131–

---

[1] The government asserts several times in its brief that "Harbor is a subject of a grand jury proceeding." Under Rule 6 of the Federal Rules of Criminal Procedure, the government's attorneys "must not disclose a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B)(vi); *see also In re Grand Jury Investigation*, 610 F.2d 202, 213, 219 (5th Cir. 1980) ("Punishment for contempt of court is the sanction specifically authorized by Rule 6(e)(1) for violations of its provisions, and a contempt citation will generally provide an adequate remedy for such violation."); Wayne R. LaFave et al., *Secrecy Requirements*, 4 Crim. Proc. § 15.2(i) (4th ed. 2020) (discussing the need to "keep secret the subject of the grand jury's inquiry while it is considering the possible issuance of an indictment" (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 n.6 (1958))). An exception exists for "[t]he court [to] authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). The government has not pointed to such authorization by this or another court.

32 (1962).  The district court's dismissal of Harbor's pre-indictment Rule 41(g) motion constitutes a final appealable decision of the district court.  *See DiBella*, 360 U.S. at 131–32; *see also Richey v. Smith*, 515 F.2d 1239, 1242–43 (5th Cir. 1975) ("Notwithstanding that the *DiBella* test would seem to be satisfied in the instant case . . . , we note that the order appealed from rested solely on jurisdictional grounds and was not a ruling on the merits of the motion as was the case in *DiBella*.").[2]

## III.

The district court erred in dismissing Harbor's Rule 41(g) motion. We review the district court's decision to no longer exercise equitable jurisdiction for abuse of discretion.  *See Richey*, 515 F.d at 1243.  "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *accord United States v. Gomez-Herrera*, 523 F.3d 554, 563 n.4 (5th Cir. 2008) ("A district court abuses its discretion if its ruling rests on an erroneous view of the law." (citing *Cooter*, 496 U.S. at 405)).

In its dismissal order, the district court said that it initially exercised its equitable jurisdiction "to ensure that there were processes in place to protect Harbor's privileged information."  Sealed Order at 2–3, *Harbor*

---

[2] The government relies on an inapplicable case, *Mohawk Indus. v. Carpenter*, to argue that the district court's order was not immediately appealable.  558 U.S. 100 (2009). *Mohawk* addressed interlocutory appeal of a district court's discovery order in a pending civil case, and the Court noted that "several potential avenues of review apart from collateral order appeal" were available to the appellant.  *Id.* at 104–05, 110–11.  Here, however, Harbor is not involved in any pending case—civil or criminal—other than its Rule 41(g) civil case, in which return of Harbor's property is the single dispositive issue.  The "avenues of review" available in *Mohawk* are thus not available to Harbor.  The only available review of an adverse ruling on Harbor's preindictment Rule 41(g) motion is direct appeal of the district court's final judgment in this independent civil case.

*Healthcare Sys. v. United States*, No. 4:18-CV-3195 (S.D. Tex. Aug. 19, 2019), ECF No. 35.  The district court declined to further exercise its equitable jurisdiction because it was satisfied that sufficient protective measures were in place and because of its assessment of the factors articulated in *Richey v. Smith*. *Id.* at 3.

Under *Richey v. Smith*, a district court must consider four factors when deciding whether to grant a pre-indictment motion for return of property:

> (1) "[W]hether the motion for return of property accurately alleges that the government agents . . . displayed 'a callous disregard for the rights of [the plaintiff]'";
>
> (2) "[W]hether the plaintiff has an individual interest in and need for the material whose return he seeks;"
>
> (3) "[W]hether the plaintiff would be irreparably injured by the denial of the return of the property; and"
>
> (4) "[W]hether the plaintiff has an adequate remedy at law for the redress of his grievance."

515 F.2d at 1243–44 (internal footnotes omitted) (quoting *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974)).  The district court erred in its understanding of these factors and thus abused its discretion by declining to further exercise its equitable jurisdiction.

The district court incorrectly concluded that the government did not show a "callous disregard" for Harbor's rights simply because it obtained search warrants prior to seizing Harbor's privileged materials.  But it is a stipulated fact in this case that "the government did not seek express prior authorization from the issuing Magistrate Judge for the seizure of attorney-client privileged materials."  Stipulations of Fact at 4, *Harbor Healthcare Syst. v. United States*, No. 4:18-CV-3195 (S.D. Tex. Dec. 4, 2018), ECF No. 17.  It is further stipulated that the government knew that Sprott's "office and computer contained attorney-client privileged documents and attorney work

product" when it executed one of the search warrants. *Id.* at 3–4. The stipulated facts show that the government made no attempt to respect Harbor's right to attorney–client privilege in the initial search. *Cf. United States v. Zolin*, 491 U.S. 554, 571 (1989) ("There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents."); *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 982 F.3d 409, 411 (5th Cir. 2020) (Elrod, J., dissenting from denial of rehearing *en banc*) ("Although the privilege may at times prevent the government from obtaining useful information, 'this is the price we pay for a system that encourages individuals to seek legal advice and to make full disclosure to the attorney so that the attorney can render informed advice.'" (quoting *In re Grand Jury Subpoena for Att'y Representing Crim. Defendant Reyes-Requena*, 926 F.2d 1423, 1432 (5th Cir. 1991))).

Moreover, the government, by its treatment of Harbor's privileged materials after the search, further disregarded Harbor's rights. When asked at oral argument why the government had not already destroyed or returned copies of documents that it agreed were privileged, the government said: "The only reason they haven't been destroyed is for the potential for a future filter team, if the criminal team looks at the privilege logs and disagrees for some reason." A taint team serves no practical effect if the government refuses to destroy or return the copies of documents that the taint team has identified as privileged. The government has thus conceded that it has no intent to respect Harbor's interest in the privacy of its privileged materials as the investigation unfolds.

The district court was wrong to overlook the government's continued retention of privileged documents as an aspect of its "callous disregard," and it was simply mistaken in its belief that there were "processes in place to protect Harbor's privileged information."

The district court likewise erred in its assessment of Harbor's need for the documents and information the government seized. In the view of the district court, Harbor's lack of a practical need for access to the copies of the documents retained by the government "weigh[ed] against granting Rule 41(g) relief." Sealed Order at 5, *Harbor Healthcare Sys. v. United States*, No. 4:18-CV-3195 (S.D. Tex. Aug. 19, 2019), ECF No. 35. But Harbor's need does not lie in accessing the government's copies. Rather, it lies in protecting the privacy of the privileged material in the documents. *Cf. Richey*, 515 F.2d at 1242 n.5 ("We have indicated previously that a plaintiff in a civil action for the return of property has a sufficient proprietary interest in copies of documents which have been seized to demand their return as well as the return of the originals."). The whole point of privilege is privacy. *Cf. Fisher v. United States*, 425 U.S. 391, 399 (1976) ("[T]he Court has often stated that one of the several purposes served by the constitutional privilege against compelled testimonial self-incrimination is that of protecting personal privacy. . . . Within the limits imposed by the language of the Fifth Amendment, which we necessarily observe, the privilege truly serves privacy interests . . . ."); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 545 n.1 (1977) (Rehnquist, J., dissenting) ("The invocation of such privileges has the effect of protecting the privacy of a communication made confidentially . . . by a client to an attorney; the purpose of the privilege, in each case, is to assure free communication on the part of the confidant and of the client, respectively."). Despite Harbor's great privacy interest, the government has held its attorney–client privileged documents since May 18, 2017—the government has deliberately held on to Harbor's privileged material for over four years. The district court erred by failing to account for Harbor's privacy need, which weighs heavily in favor of granting Rule 41(g) relief.

The government's reliance on *United States v. Search of Law Office, Residence, and Storage Unit Alan Brown*, 341 F.3d 404 (5th Cir. 2003) is

unavailing.  In that case, the Rule 41 movant argued that he would suffer irreparable reputational harm from a grand-jury indictment.  *Id.* at 414–15. Here, however, Harbor has not alleged any harm arising from a possible grand jury—it alleges a harm from the ongoing intrusion into its privacy and the continued possession of attorney–client privileged documents. Importantly, in *Alan Brown*, the movant failed "to identify specific privileged documents in the hands of the government or provide a legal basis for asserting a particular privilege."  *Id.* at 414.  Here, Harbor has identified thousands of privileged documents, and the government has conceded the basis for the privilege for many of those.  Harbor has done far more than assert "vague allegations," *id.*, but has alleged a privacy harm arising from the seizure and retention of specific attorney–client privileged documents.

The government's ongoing intrusion on Harbor's privacy constitutes an irreparable injury that can be cured only by Rule 41(g) relief.  Harbor remains injured as long as the government retains its privileged documents. That injury can only be made whole by the government returning and destroying its copies of the privileged material.  *See Richey*, 515 F.2d at 1242 n.5

Finally, Harbor does not have an adequate remedy at law.  A motion to suppress in a possible criminal proceeding does not redress Harbor's injury for two primary reasons. First, it is not certain that there ever will be criminal charges brought against Harbor.  If no charges are brought but a suppression motion is Harbor's only means of redress, Harbor would never have an opportunity to challenge the government's seizure of its privileged materials.  Second, suppression motions vindicate an interest entirely different from Rule 41(g) motions.  Suppression merely prevents the government from using certain materials as evidence in a judicial proceeding—suppression does not force the government to return those materials to the criminal defendant.  *Cf. Hunt v. U.S. Dep't of Just.*, 2 F.3d

96, 97 (5th Cir. 1993) (determining that a Louisiana forfeiture proceeding was not an adequate remedy because it would not help the movant recover wrongfully seized funds). Rule 41(g), by contrast, says nothing about the admissibility of evidence. Instead, it is concerned solely with the return of property to the Rule 41(g) movant. Suppression and Rule 41(g) occupy two entirely distinct spheres within the universe of unlawful searches and seizures. [3]

The government unconvincingly argues that suppression is an adequate remedy because Rule 41(g), like suppression, is concerned with unlawful searches and seizures. That argument overlooks the distinction explained above. Suppression protects criminal defendants from the procedural harm arising from the introduction of unlawfully seized evidence. Rule 41(g) protects persons from the "deprivation of property" by an unlawful search and seizure. It makes little sense to say that the Fourth Amendment can be litigated only in a suppression motion when there are other types of harm arising from unlawful searches and seizures. This is particularly true since Rule 41(g) expressly contemplates such a harm and offers a remedy.

In short, the district court erred by misunderstanding the harm alleged by Harbor and by equating return of property with suppression of evidence.

---

[3] The government relies on *In re Sealed Case*, 716 F.3d 603 (D.C. Cir. 2013) to argue that Harbor's Rule 41(g) motion is really about suppression, not return of property. In *Sealed Case*, however, "the movant ha[d] already recovered the property from the government," so the Rule 41(g) motion could not be "'solely' for its return." 716 F.3d 603, 607–08 (D.C. Cir. 2013). Indeed, the court determined that "the attorney–client privilege [dispute was] moot." *Id.* at 609; *accord id.* at 612 (Kavanaugh, J., concurring). Here, by contrast, the government has not yet returned Harbor's property and is instead refusing to do so.

No. 19-20624

It therefore abused its discretion by refusing jurisdiction over Harbor's Rule 41(g) motion.[4]

\*     \*     \*

For the reasons set forth above, the judgment of the district court is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

---

[4] The district court expressed concern about the practicality of it parsing through reems of Harbor documents to rule of claims of privilege. The district court's concern can be assuaged by the array of document-review options. For starters, the government could simply be ordered to return the documents for which it does not dispute the asserted basis for the privilege. For the balance, the court could engage a magistrate judge or special master to review the potentially privileged documents. Even this will not entail reviewing each and every document; Harbor's privilege logs should allow for recommendations or rulings based on categories of documents. *See In re Terra Int'l., Inc.*, 134 F.3d 302, 304–05, 307 (5th Cir. 1998).