**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2955
_____

UNITED STATES OF AMERICA

v.

JOSEPH W. NOCITO


Nocito Enterprises, Inc.; Palace Development Company, Inc.;
Jonolley Properties, Inc.,
Intervenors/Appellants pursuant to F.R.A.P. 12(a)
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:18-cr-00035-001)
District Court Judge: Honorable Joy Flowers Conti
_____

Argued June 21, 2022
_____

BEFORE: McKEE,[*] RESTREPO and BIBAS, *Circuit Judges*

(Filed: April 3, 2023)
_____

OPINION OF THE COURT
_____

---

[*] The Honorable Theodore McKee assumed senior status on October 21, 2022.

Phillip P. DiLucente
Phil DiLucente & Associates
310 Grant Street
Suite 1801 Grant Building
Pittsburgh, PA 15219

Daniel Hartnett [ARGUED]
Clark Hill
130 East Randolph Street
Suite 3900
Chicago, IL 60601

Brandon J. Verdream
Clark Hill
301 Grant Street
One Oxford Centre, 14th Floor
Pittsburgh, PA 15219
        *Counsel for Intervenors/Appellants*

Laura S. Irwin
Matthew S. McHale [ARGUED]
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
        *Counsel for the Appellee*

RESTREPO, *Circuit Judge*

Federal Rule of Criminal Procedure 41(g) allows persons deprived of property by the government to petition the courts to get it back. Here, the Rule 41(g) motion was not intended to recover property but to suppress evidence in the underlying prosecution. Because we conclude the Rule 41(g) motion was part of an ongoing criminal process, the District Court's denial of appellants' motion does not constitute a final order. We must therefore dismiss this appeal for lack of jurisdiction.

I.    Factual and Procedural Background

In November 2022, Joseph W. Nocito, president and CEO of Automated Health Systems, Inc. (AHS), pled guilty to

2

one count of a federal indictment charging him with tax fraud in violation of 18 U.S.C. § 371. Under the terms of the plea, Nocito accepted responsibility for the conduct charged in the indictment's other nine counts and agreed to pay restitution in the amount of $15,824,056.00, pursuant to 18 U.S.C. § 3663A(3).

Count one of the indictment described Nocito's long-standing conspiracy to use "business entities" he owned and controlled to commit tax fraud. Beginning in 2005 and continuing through 2013, Nocito characterized his personal expenses as deductible AHS business expenses and "shuffled" AHS's untaxed profits between different companies he owned and controlled. These companies included the intervenors in this case, Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. (collectively, the Intervenors). Count one stated the Intervenors "performed no significant business purpose, generated little to no independent revenue, and were funded primarily from payments from other Nocito companies." JA2-49.

Nocito hid AHS's profits in these shell companies by falsely characterizing millions of dollars as payments for business services, such as "'loans,' or as 'management,' 'administrative' and 'consulting' expense payments." JA2-54. This concealment of the taxable corporate income enabled Nocito to avoid paying $11 million in corporate income tax. Nocito used the concealed profits stowed in the Intervenors to pay his personal expenses, such as construction costs for his 39,000 square foot home "Villa Noci," the salaries of his personal butler and cook, exotic cars, and his grandchildren's private school tuitions. JA2-50–53. Nocito filed false federal income tax returns for the Intervenors, claiming the personal expenses were "deductible ordinary and necessary business expenses." JA2-53. He filed personal income tax returns that "failed to truthfully report [his] true gross personal income," which created "millions of dollars in unpaid personal income tax owed to the IRS." JA2-53.

In 2013, Dennis Sundo, the secretary and chief financial officer of AHS, provided documents to government investigators pursuant to a cooperation agreement. Included in the packet was Exhibit J, which was later determined by the

3

District Court to be a privileged document. The Court described Exhibit J as a "plain, typed sheet of paper, with no letterhead" where "Denny" [Sundo] conveyed legal advice to "Joe" [Nocito], asking for "approval to make a journal entry on the company books to charge off personal expenses." JA1-6 (citing *United States v. Nocito*, 2020 WL 4350241, at *2 (W.D. Pa. July 29, 2020), ECF 99 at 6 n.8). The Court found there was no indication the document belonged to the intervening companies, and the Intervenors recognized that Sundo, the purported author of Exhibit J, was not one of their employees.

In November 2017, Sundo testified before the grand jury. In response to a question from the prosecution, Sundo explained what Exhibit J was and read its contents into the record. After his indictment, Nocito moved for pre-trial discovery of all the documents provided by Sundo to support a possible motion to suppress based on government misconduct. Specifically, Nocito sought to explore a possible government intrusion into his individual attorney-client privilege through Sundo's cooperation.

After two evidentiary hearings the District Court denied the motion, concluding the government had no obligation to turn over the documents. The Court found Nocito could not compel the government to provide Exhibit J—the only document "arguably applicable to the invasion of Nocito's attorney-client privilege"—because he did not provide a "colorable basis" for his governmental misconduct claim. JA2-218–223. Nocito could not show the government possessed an objective awareness of an "ongoing, personal attorney-client relationship" referenced in Exhibit J, nor show a "deliberate intrusion into that relationship." JA2-217.[1]

---

[1] The Court ruled proving such an objective awareness was impossible because Nocito's attorneys initially represented his businesses before expanding their representation to include his personal interests as well. It also found Nocito could not prove the government deliberately intruded into any privileged relationship given that Sundo voluntarily provided the government with Exhibit J. Finally, the Court concluded it did not need to address whether Nocito was prejudiced by the introduction of Exhibit J given the "overwhelming evidence that was obtained during the IRS investigation," which

4

Nocito moved for reconsideration twice, both times re-asserting his allegations of intrusion into his attorney-client privilege. Both motions for reconsideration were denied.

In response to these denials, one of Nocito's attorneys entered his appearance on behalf of the Intervenors and applied to have the three Nocito-owned companies intervene in the prosecution. The same lawyers represent both Nocito and the Intervenors, arguing the government intruded on the Intervenors' attorney-client privilege by using Exhibit J in the Nocito grand jury proceedings. Attached to the application for intervention was a motion for the return of property pursuant to Rule 41(g).

The property the Intervenors sought to have returned was not Exhibit J itself—the Intervenors readily concede they possess their own copies of the actual document—but the privilege attached to the legal advice disclosed in the letter. The Intervenors argue that the "return" of this "property" would prevent the government from using Exhibit J at all future proceedings, as well as eliminating any influence the document may have had on the government's investigation into Nocito's tax fraud.

In July 2020, the District Court permitted the companies to intervene but denied their Rule 41(g) motion. It found the Intervenors—even assuming they could establish Exhibit J was privileged and the privilege "could be viewed as a property interest" of which they were deprived—were attempting to use Rule 41(g) to improperly suppress Exhibit J from the evidence of fraud against Nocito. JA1-11. The Court recognized Rule 41(g) does not serve the same purpose as the exclusionary rule, nor is a motion for the return of property an effective means for suppressing evidence, given that Rule 41(g) allows a court to "protect access to the property and its use in later proceedings." Fed. R. Crim. P. 41(g).[2] While recognizing the

occurred before Sundo provided any documents to investigators. JA2-227.

[2] The relevant portion of Fed. R. Crim. P. 41(g) is as follows:

> (g) Motion to Return Property. A person aggrieved by an unlawful search and seizure of

5

government stated it did not intend to use Exhibit J at Nocito's trial, the Court nevertheless ruled the document must be accessible in case Nocito "open[ed] the door" to such questioning. JA1-11. Finally, the Court observed the Intervenors can renew their Rule 41(g) motion at the conclusion of the government's case.

## II. Analysis

Before us is the Intervenors' appeal of the District Court's denial of their Rule 41(g) motion. In raising this challenge, the Intervenors make arguments regarding the motion's merit, the relief to which they are entitled, and the applicable standard of review.[3] These arguments, however, cannot be addressed unless the order denying the motion was final. For the reasons below, we conclude it was not and we therefore lack the jurisdiction to address the Intervenors' claims.

Rule 41(g) allows persons "aggrieved by an unlawful search and seizure or by the deprivation of property" to move

property or by the deprivation of property may move for the property's return. . . . The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

[3] They claim a Rule 41(g) motion is reviewed through the same lens as a civil complaint, requiring the District Court to accept all well-pleaded allegations in their motion to be accepted as true. Their appeal is premised on the theory that an attorney-client privilege constitutes a form of property that falls under Rule 41(g)'s purview and the Intervenors are entitled to its "return." Appellants' Br. 42-43. They allege the government illegally "purloined" Exhibit J, meaning the Intervenors were "aggrieved by an unlawful search and seizure" under Rule 41(g). Appellants' Br. 36; Fed. R. Crim. P. 41(g). Finally, the Intervenors argue they are entitled to an evidentiary hearing to uncover the ways the government exploited the privileged content in Exhibit J.

6

the government to return property. Fed. R. Crim. P. 41(g). Although addressed by the same rule of criminal procedure, motions to suppress and motions to return property serve different and distinct interests: "Suppression helps ensure that law enforcement personnel adhere to constitutional norms by denying them, and the government they serve, the benefit of property that is unlawfully seized. Rule 41(g) is concerned with those whose property or privacy interests are impaired by the seizure." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1173 (9th Cir. 2010) (en banc) (per curiam), *overruled in part on other grounds as recognized by Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018) (per curiam).

Whereas only criminal defendants can seek suppression, the class of people impaired by the loss of their property is much broader. *Id.* Whether evidence should be suppressed is a question "intimately involved" in the criminal process. *United States v. 608 Taylor Ave.*, 584 F.2d 1297, 1300 (3d Cir. 1978) (citing *DiBella v. United States*, 369 U.S. 121, 131–32 (1962)). An order deciding a suppression motion is "considered to be merely a step in the criminal process" and does not constitute a final order. *Id.* Alternatively, an order denying a Rule 41(g) motion can be final because such a motion, unlike a motion to suppress, could be premised entirely on property rights and not intertwined with a criminal prosecution in any way. *Id.* If a motion for the return of property is made independently of a criminal prosecution—in that it is not intended to gain some strategic advantage for a criminal defendant—the order denying relief is final.

Under 28 U.S.C. § 1291, we only have subject matter jurisdiction if the District Court's denial of the Intervenors' Rule 41(g) motion constitutes a final decision. The government argues the Intervenors' motion was essentially a motion to suppress all evidence derived from Exhibit J from Nocito's trial. The Intervenors disagree, claiming that the true purpose of their motion was to regain possession of their property and the order denying relief is final because it "finally resolves their privilege and information-sharing claims." Appellants' Br. 1. Therefore, to determine whether the order denying the Rule 41(g) motion is final under § 1291, we must

7

determine what the Intervenors sought to accomplish by litigating the motion in the District Court.

The policy behind § 1291's finality rule is well-established: the rule is intended to prohibit "piecemeal appellate review" and discourage the disruption of "ongoing criminal prosecutions." *In re Grand Jury*, 635 F.3d 101, 103 (3d Cir. 2011) (citing *DiBella*, 369 U.S. at 124, 126–29). The need for such discouragement is apparent here, given the time and resources already spent litigating the use of Exhibit J in Nocito's prosecution. Sundo provided Exhibit J to the government in 2013 and testified before the grand jury in 2017. Since his indictment in 2018, Nocito has litigated multiple motions and conducted two evidentiary hearings, all focused on the government's use of Exhibit J. The Intervenors filed their motion concerning Exhibit J, along with their request for an evidentiary hearing, in the interim. They filed notice for the instant appeal in September 2020. Nocito's criminal trial, which is no longer pending due to his recent guilty plea, would have been delayed by this appeal, given the evidentiary implications of the relief sought.

To the extent the Intervenors' Rule 41(g) motion was intended to serve as an "instrument of harassment" or a delay tactic, such gamesmanship is contrary to the law. *DiBella*, 369 U.S. at 129. Far from harmless, "undue litigiousness" wastes limited judicial resources, hampers "the effective and fair administration of the criminal law," and stalls the implementation of justice. *Id*. at 124–26. Recognizing that Rule 41(g) motions may be misused to hinder criminal prosecutions, the Supreme Court held an order denying the motion for the return of property is appealable only if it is independent of any related criminal case. *Id*. at 131. To assess a motion's independence, *DiBella* applied a two-pronged test—the motion must be: (1) "solely for [the] return of property" and (2) "in no way tied to a criminal prosecution in esse against the movant." *Id.* at 131–32. Here, neither prong is met, and we therefore do not have jurisdiction.

a. Prong one: Motion Solely for the Return of Property

In determining whether the Rule 41(g) motion seeks more than the mere return of property, we must look to the "essential character of the motion." *Government of Virgin*

8

*Islands v. Edwards*, 903 F.2d 267, 272 (3d Cir. 1990). In so doing, this Court must assess whether the motion is intended not for property retrieval but "for strategic gain at a future hearing or trial," such as delaying an underlying prosecution or suppressing evidence. *In re Sealed Case*, 716 F.3d 603, 607–08 (D.C. Cir. 2013).

If the relief sought in a Rule 41(g) motion is indicative or suggestive of the suppression of evidence, the denial of such relief is not a final judgment. *Id.* at 608–09. This is true even though granting a motion to return property no longer results in suppression; under the current version of Rule 41(g), courts can maintain access to the returned property to enable its use at future proceedings. Fed. R. Crim. P. 41(g) ("[T]he court . . . may impose reasonable conditions to protect access to the property and its use in later proceedings."). But this does not mean the movant who misuses the rule by improperly seeking the suppression of evidence *along with* the return of property can immediately appeal a denial. If the motion indicates an intention to restrict the government's access to evidence—such as requesting the government return all the copies of a document, rather than just the original—this Court may conclude the motion served a purpose aside from the return of property and deem the order denying relief not a final judgment. *In re Grand Jury,* 635 F.3d at 104–05.

The Intervenors' Rule 41(g) motion sought more than the return of property. The essence of their motion is made plain by the nature of the property they purportedly seek to repossess. The Intervenors' motion is premised on the presumption that attorney-client privilege constitutes property under the purview of Rule 41(g). They provide no legal authority to support this presumption. Despite this absence, the Intervenors argue they are entitled to regain "effective possession" of Exhibit J, which would mean restoring the confidential nature of the privileged communication. JA2-287. This restoration would require "undoing" any alleged derivative use of Exhibit J, such as the results of any "investigative strategies" the government pursued because of the document, as well as the use of Exhibit J at Nocito's grand jury proceeding. JA2-288, 292. Rather than merely request copies, the Intervenors seek to undo the government's use of Exhibit J, "root and branch." Appellants' Br. 58. The

9

Intervenors argue the relief requested requires an evidentiary hearing to uncover the government's "discreet informal discovery activities" tied to the document. Appellants' Br. 64. Until the confidential nature of Exhibit J is "returned," the Intervenors claim they are entitled to injunctive relief to prevent its use at further proceedings, such as Nocito's criminal trial. At bottom, the Intervenors' Rule 41(g) motion sought to halt the prosecution against Nocito while the movants excavated the evidence of fraud underlying the grand jury's indictment.

The Intervenors justify their use of Rule 41(g) by claiming it is their only means to vindicate their "property" right to the privileged communication.[4] Viewed in the context of the record, however, the motion is plainly Nocito's attempt to have his shell companies achieve what he could not. After his efforts to challenge the use of Exhibit J failed, Nocito had three companies he owns, controls, and legally represents file the instant Rule 41(g) motion to have Exhibit J "returned." The Intervenors do nothing to discourage this conclusion, admitting that Nocito's filings "assert some common legal theories concerning the government's improper intrusions into and exploitation of privileged and protected information" as those

---

[4] While a Rule 41(g) motion may be the Intervenors' means for repossessing property, this appeal is not their only opportunity to litigate such a motion. As the District Court noted, the Intervenors could refile their Rule 41(g) motion and reassert their claims once the Nocito prosecution is over. *See United States v. Furina*, 707 F.2d 82, 85 (3d Cir. 1983). The Intervenors counter the "property" they want returned is attorney-client privilege, which would be destroyed if introduced at future proceedings. But this does not render the ruling denying the Rule 41(g) motion immediately appealable, given the nature and scope of the relief sought. Moreover, the Supreme Court has held "orders adverse to the attorney-client privilege" do not warrant immediate appeal under the collateral order doctrine; "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108–09 (2009). To the extent the motion seeking the return of property is genuine, the Intervenors can pursue relief after Nocito is sentenced.

espoused in their motion to return property. Appellants' Br. 5. Thus, the Intervenors use Rule 41(g) as a pretext in order to act on Nocito's behalf. Because we conclude the essence of the motion is to undermine the government's efforts to prosecute Nocito for tax fraud, the District Court's denial of relief is not appealable under *DiBella*'s first prong.

b. Prong two: Tied to underlying prosecution *in esse*.

Although the failure to meet the first prong of *DiBella* is sufficient to warrant dismissal for lack of jurisdiction, we conclude the Intervenors fall short of satisfying the second prong as well. The Intervenors argue the denial of their Rule 41(g) motion can be immediately appealed because they are not named defendants in the prosecution against Nocito. While this is an accurate statement of fact, it defies all reason to conclude they are "in no way tied" to the ongoing criminal prosecution against their owner. *DiBella,* 369 U.S. at 132.

Nocito pled guilty to one count of tax fraud on November 17, 2022, but has yet to be sentenced. According to the District Court docket, the parties have agreed to continue Nocito's sentencing until June 2023. Thus, the underlying prosecution against Nocito remains ongoing. *Berman v. United States*, 302 U.S. 211, 212 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment."). That Nocito has pled guilty does not end the prosecution because the sentence stands as the "final determination of the merits of the criminal charge." *Id.* If the Intervenors are tied to Nocito's prosecution, we lack jurisdiction until that prosecution becomes final.[5]

The Intervenors argue they had a business purpose, bank accounts, and employees, but do not deny that Nocito is their sole owner and fully controls all three companies. Since argument, Nocito has pled guilty to one count of the indictment and accepted responsibility for the conduct charged in the remaining nine counts. The indictment provides that, although not named as defendants, the Intervenors acted as extensions

---

[5] Under the terms of the plea, Nocito waived his right to appeal the conviction but can appeal his sentence if it exceeds the maximum statutory limits or unreasonably exceeds the guidelines determined by the sentencing court.

11

of Nocito and were used by him to perpetuate tax fraud. Count one alleged the Intervenors concealed profits from AHS; Nocito paid the companies fabricated administrative, management, and consulting fees with untaxed AHS profits. Count one also outlined how Nocito used the Intervenors to disguise his personal expenses by claiming they were the companies' "ordinary and necessary business expenses." JA2-57-58. Nocito filed false tax returns for the Intervenor companies claiming the personal expenses as deductions, and false personal income tax returns excluding the income "shuffled" to the Intervenors. As vehicles for Nocito's fraud, they were subjected to the government's investigation and their fraudulent business practices were exposed. Given their crucial role in the tax fraud scheme, it strains credibility to say the companies are "in no way tied" to the prosecution *in esse* against Nocito. *In re Grand Jury*, 635 F.3d at 105 (quoting *Furina*, 707 F.2d at 84). We conclude then, under this second prong of *DiBella*, that the order denying the appellant's Rule 41(g) motion is not final.[6]

III.    Conclusion

For the foregoing reasons, we conclude the denial of the appellants' motion for the return of property is not appealable, and we therefore dismiss this appeal for lack of jurisdiction.

---

[6] The Intervenors argue they are entitled to an immediate appeal under *Perlman v. United States*, 247 U.S. 7 (1918), and its progeny. The Supreme Court characterized the rule in *Perlman* as: "a discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." *Church of Scientology v. United States*, 506 U.S. 9, 18 n.11 (1992). *Perlman* does not apply to the Intervenors' case, which does not involve a subpoena or discovery order directed at a disinterested third party. *Id.* The Intervenors are not disinterested parties but are instead directly involved in the underlying prosecution. Moreover, we note that *Perlman* did not address Rule 41(g) motions and stretching *Perlman* to cover the appeals from the denial of such motions would increase the risk that Rule 41(g) would be used as an instrument to harass and delay trials. *DiBella*, 369 U.S. at 129.

12