**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-4330**

In re: SEARCH WARRANTS ISSUED FEBRUARY 18, 2022.
_____

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

   v.

JOHN DOE,

        Movant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Senior District Judge.  (3:22-mj-00078-RJC)

Argued:  January 25, 2024                      Decided:  August 2, 2024

Before AGEE, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

Dismissed by published opinion.  Judge Richardson wrote the opinion, in which Judge Agee joined.  Judge Quattlebaum wrote a concurring opinion.

**ARGUED:**  Elliot Sol Abrams, CHESHIRE PARKER SCHNEIDER, PLLC, Raleigh, North Carolina, for Appellant.  John Gibbons, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Erin L. Wilson, CHESHIRE PARKER SCHNEIDER, PLLC, Raleigh, North Carolina, for Appellant. Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States

Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

RICHARDSON, Circuit Judge:

John Doe appeals the district court's order denying his Federal Rule of Criminal Procedure 41(g) motion, which sought to impose a filter protocol to protect his asserted privileges in records lawfully seized by the Government. But we can't reach the merits of Doe's motion because we lack appellate jurisdiction over it. So we dismiss his appeal.

## I.      BACKGROUND

In early 2022, FBI and IRS agents investigated Doe and his businesses for suspected wire fraud, money laundering, and tax fraud. The agents sought and obtained three search warrants from a neutral and detached magistrate, which authorized the Government to search Doe's apartment, office, and vehicle for evidence of the suspected crimes. But the Government anticipated that it might encounter materials covered by the attorney-client privilege or work-product doctrine during its search. So it elected to include a provision in the warrant establishing a filter protocol for any protected items, which the magistrate judge approved.

Under the initial protocol included in the warrants, investigators would execute the search warrants and begin their review of seized materials as though it were any ordinary search. But should investigators—referred to as "the Prosecution Team"—identify "materials[] that [wer]e potentially attorney-client privileged or subject to the work product doctrine," such review would halt until "a Filter Team of government attorneys and agents" with "no future involvement in the investigation" of Doe could "segregate" potentially protected documents from any unprotected materials. J.A. 6. While unprotected materials would be immediately sent to the Prosecution Team, potentially protected materials could

3

be sent only with Doe's consent or a court order finding that the materials were not privileged.

With this limitation in place, agents executed the three warrants on February 23, 2022. The searches of Doe's apartment and office resulted in the seizure of various "paper materials" and twenty-three electronic devices, including computers, thumb drives, hard drives, and a cell phone. J.A. 128. That same day, the Government served Doe's businesses with grand jury subpoenas.

Although the search warrants authorized the Government to begin its review of the seized material immediately, it decided to wait and have the Filter Team prophylactically segregate privileged materials.[1] The Government thus contacted Doe in May 2022—three months after the searches—and asked for "search terms, such as attorneys['] emails and domain names, to assist in segregating potentially privileged material." J.A. 76. Yet Doe's counsel failed to respond to the Government's request. His counsel then withdrew from the case a few weeks later, so the Government asked Doe's new counsel for search terms in October. At that point, Doe's new counsel refused to give any search terms and "objected to the Government's review of seized material absent agreement or court order." J.A. 128.

Doe and the Government then began negotiating how best to review the seized material while still respecting Doe's privileged records. Unfortunately, those negotiations failed, so Doe made his arguments in court. On December 2, 2022, Doe moved before a

---

[1] The Government has already reviewed the seized paper documents, and Doe has not complained about using the warrant's filter protocol regarding those documents.

4

magistrate judge to intervene in the district court proceeding granting the search warrants "in order to assert valid claims of privilege and thereby avoid the deprivation of his constitutional rights." J.A. 17. He then filed a second motion "pursuant to the Fourth, Fifth, and Sixth Amendments; Federal Rule of Civil Procedure 65; and Federal Rules of Criminal Procedure 16(d) and 41(g) to enjoin the government from reviewing the seized material utilizing the *ex parte* filter protocol set forth in the search warrant." J.A. 21. In so doing, Doe "move[d] for an order establishing a filter protocol that adequately protects [his] legal privileges." *Id.* Doe's proposed protocol would require three things: (1) he would "have an opportunity to conduct a privilege review and lodge privilege objections prior to documents being provided to the Prosecution Team"; (2) "a judicial official (a judge or a special master) [would] make privilege determinations as to any documents about which the privilege assertion is disputed prior to those documents being provided to the Prosecution Team"; and (3) "the Filter Team [would] be comprised of people who are not employed by the same offices as members of the Prosecution Team." *Id.*

The Government didn't oppose the intervention motion, and the magistrate judge granted it. The magistrate judge, however, denied Doe's substantive motion. He agreed that a Rule 41(g) motion is the proper method for seeking an injunction against a proposed filter protocol. But on the merits, he found that Doe is not entitled to such an injunction because Doe does not satisfy any of the four factors required for a preliminary injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). As such, the magistrate

5

judge adopted the Government's proposed filter protocol, which was simply a modified version of the initial filter protocol.[2]

Doe subsequently appealed the magistrate's denial of his filter-protocol motion to the district court.[3] The district court, in turn, considered the *Winter* factors anew and agreed that Doe is not entitled to an injunction. So it denied Doe's appeal on the merits. Doe then timely appealed to this Court.

## II.    DISCUSSION

Doe claims that the district court's order is contrary to law. We cannot reach the merits of his argument, however, for we lack jurisdiction over his appeal.

### A.    We lack appellate jurisdiction under 28 U.S.C. § 1291.

Like all federal courts, we are a court of limited subject matter jurisdiction. We may only decide a case when both the Constitution and a federal statute permit it. *Wideman v. Innovative Fibers LLC*, 100 F.4th 490, 495 (4th Cir. 2024). Furthermore, because subject matter jurisdiction defines our power to adjudicate, we cannot reach the merits of a case if we lack it. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998). We thus have "a special obligation to 'satisfy [ourselves] . . . of [our] own jurisdiction,' . . . even

---

[2] The modified filter protocol provided that the Filter Team's initial review would be performed by "running a comprehensive list of privilege-related search terms over the entire population of the records." J.A. 60. The magistrate further ordered that Doe could supply the Government with other search terms to help identify potentially privileged documents.

[3] The Government did not cross-appeal the magistrate judge's order granting Doe's motion to intervene. The district court thus did not review it. And the Government does not challenge that order in this Court.

though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (quoting *Mitchell v. Maurer,* 293 U.S. 237, 244 (1934)). And the party asserting appellate jurisdiction bears the burden of proving its existence. *U.S. Fid. & Guar. Co. v. Arch Ins. Co.*, 578 F.3d 45, 55 (1st Cir. 2009).

Our appellate jurisdiction is generally limited to appeals from "final decisions of the district courts." 28 U.S.C. § 1291.[4] Ordinarily, a district court's decisions are not final until there is a judgment on the merits of a case. *United States v. Carrington*, 91 F.4th 252, 264 (4th Cir. 2024). This so-called "final judgment rule" is grounded in the principle that, "[t]o be effective, judicial administration must not be leaden-footed." *Cobbledick v. United States*, 309 U.S. 323, 325 (1940). If litigants could obtain immediate review of every "component element[] in a unified case," *id.*, the district court's work would be interrupted indefinitely, appellate dockets would be clogged, and litigants could harass each other with constant, costly appeals. *Flanagan v. United States*, 465 U.S. 259, 264 (1984). These concerns are even greater in criminal cases, as piecemeal criminal appeals also implicate a criminal defendant's right to a speedy trial and the public's interest in the swift administration of criminal trials. *United States v. Sueiro*, 946 F.3d 637, 640 (4th Cir. 2020); *Flanagan*, 465 U.S. at 264.

Although Doe affixed several labels to his motion below, he and the Government agree that the district court properly treated it as one under Federal Rule of Criminal

---

[4] Along with 28 U.S.C. § 1292(a)(2) (discussed below), there are other statutory exceptions to the final-judgment rule, but none are relevant here.

Procedure 41(g).[5] So we treat the district court's order as a Rule 41(g) order.[6] Such orders, however, are rarely final orders.

To explain why, we turn to *DiBella v. United States*, 369 U.S. 121 (1962). There, the Supreme Court addressed the appealability of pre-indictment suppression motions made under the precursor to Rule 41(g)—then-Rule 41(e). At the time, Rule 41(e) combined the modern Rules 41(g) and (h) by permitting "[a] person aggrieved by an unlawful search and seizure" to move for both the return of property *and* the suppression of that property in any criminal proceedings. *Id.* at 122 n.1 (quoting Fed. R. Crim. P. 41(e) (1962)). The Court in *DiBella* held that orders resolving pre-indictment suppression motions are unappealable before final judgment. *Id.* at 129–31. Such orders, it explained, "present[] an issue that is involved in and will be part of a criminal prosecution in process at the time the order is issued," so they "will necessarily determine the conduct of the trial

---

[5] Rule 41(g) provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).

[6] In so doing, we do not decide whether it was in fact proper to treat Doe's motion as a Rule 41(g) motion. *See United States v. Korf (In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Electr. Means)*, 11 F.4th 1235, 1245 n.6 (11th Cir. 2021) (per curiam) (holding, without thorough explanation, that Rule 41 motions are the proper way to challenge filter-team protocols).

8

and may vitally affect the result." *Id.* at 126–27 (citation omitted). Moreover, permitting immediate appellate review "on the admissibility of a potential item of evidence in a forthcoming trial . . . entails serious disruption to the conduct of a criminal trial," which could transform appeals into "an instrument of harassment, jeopardizing by delay the availability of other essential evidence." *Id.* at 129. Accordingly, the Court held that orders resolving pre-indictment suppression motions are not "independent proceeding[s] begetting finality" and therefore are reviewable only on appeal from conviction and sentence. *Id.*

In reaching this result, the Court carved out a narrow exception. It explained that immediate review *is* available if a motion is (1) "solely for the return of property," and (2) "in no way tied to a criminal prosecution *in esse*[7] against the movant." *Id.* at 131–32. Such proceedings are sufficiently "independent" to impart finality for purposes of review. *Id.* at 132. Hence, they can be appealed before a final judgment. *Id.*; *see also Cogen v. United States*, 278 U.S. 221, 227 (1929); *Carroll v. United States*, 354 U.S. 394, 404 n.17 (1957).

*DiBella* applies today with just as much force to Rule 41(g) orders as it did to then-Rule 41(e) orders. When "the government has seized the property for the purposes of a criminal investigation," a Rule 41(g) motion made by the target of that investigation to return that property "is likely a 'component element[] in a unified [criminal case].'" *In re Sealed Case*, 716 F.3d 603, 605–06 (D.C. Cir. 2013) (quoting *Cobbledick*, 309 U.S. at 325 (alterations in original)). Even though a successful Rule 41(g) motion no longer results in

---

[7] *In esse* is Latin for "[i]n actual existence." *In Esse*, *Black's Law Dictionary* (11th ed. 2019).

the automatic suppression of evidence, the motion can still be used as a "delay tactic" that "stalls the implementation of justice." *United States v. Nocito*, 64 F.4th 76, 81 (3d Cir. 2023). Furthermore, some litigants may use Rule 41(g) "for strategic gain at a future hearing or trial," *In re Sealed Case*, 716 F.3d at 607, such as by "seek[ing] to enjoin the [Government] from using the material that already was seized," *Andersen v. United States*, 298 F.3d 804, 808 (9th Cir. 2002). Though this might not always amount to formal suppression, it still stems from a suppression-style rationale. *See In re Grand Jury*, 635 F.3d 101, 104 (3d Cir. 2011) (explaining that suppression aims "to prevent the government from using the evidence in criminal proceedings"). In short, "Rule 41(g) motions may be misused to hinder criminal prosecutions" in the same way *DiBella* explained that then-Rule 41(e) motions could be. *Nocito*, 64 F.4th at 81. So we must consider the "essential character and the circumstances under which it is made" when determining whether a Rule 41(g) motion is immediately appealable. *Cogen*, 278 U.S. at 225; *Carroll*, 354 U.S. at 404 n.17. If it seeks more than the return of property, or if it is in any way tied to a criminal prosecution *in esse* against the movant, then immediate review is prohibited.[8]

We conclude that Doe's Rule 41(g) motion fails both prongs of the *DiBella* test. To start, Doe's motion is not "solely for the return of property." The motion expressly seeks

---

[8] In holding that *DiBella* applies to Rule 41(g), we join many of our sister circuits. *In re Sealed Case*, 716 F.3d at 605–06; *Allen v. Grist Mill Cap. LLC*, 88 F.4th 383, 394 n.10 (2d Cir. 2023); *Nocito*, 64 F.4th at 81; *Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 597–98 (5th Cir. 2021); *Biophysics Chiropractic Ctr. v. United States*, 94 F. App'x 441, 442 (9th Cir. 2004); *Korf*, 11 F.4th at 1245; *cf. Shapiro v. United States* (*In re Warrant Dated Dec. 14, 1990 & Recs. Seized From 3273 Hubbard Detroit, Mich. on Dec. 17, 1990*), 961 F.2d 1241, 1244 (6th Cir. 1992).

to stop "the government from reviewing the seized material" until a filter protocol is established and used to review the materials for privileged documents. J.A. 36. It thus would "jeopardiz[e] by delay the availability of . . . essential evidence" for the Government's investigation until that process ran its course. *DiBella*, 369 U.S. at 129; *In re Sealed Case*, 716 F.3d at 608. Moreover, in requesting a modified filter protocol, Doe seeks to identify at this stage any privileged documents that may be inadmissible at trial. Beyond the temporary delay baked into the filter process, therefore, Doe's motion would "have some effect on the presentation of evidence at a future hearing or trial." *In re Sealed Case*, 716 F.3d at 608; *Andersen*, 298 F.3d at 808. Finally, the Government has already returned all the seized hardware to Doe and has only retained copies. So his current possession of the records "refut[es] [his] contention that by [his] motion [he] sought solely the return of [his] property." *United States v. Reg'l Consulting Servs. for Econ. & Cmty. Dev., Inc.*, 766 F.2d 870, 873 (4th Cir. 1985); *Shapiro*, 961 F.2d at 1245. For these reasons, Doe's motion is not solely for the return of property.[9]

On top of failing *DiBella*'s first prong, Doe's motion also fails under the second because the records at issue are tied to a criminal prosecution *in esse* against him. *DiBella*

---

[9] In seeking a contrary conclusion, Doe asks us to adopt the Eleventh Circuit's decision in *Korf*, in which the court held that intervenors "clearly s[ought] only the return of their property" when they moved to amend the government's filter protocol to allow them to conduct the privilege review themselves. 11 F.4th at 1243–45. Simultaneously, however, the court recognized that the motion "*primarily* asked for the court to order the return of the seized documents" while *also* seeking a change in the filter protocol more broadly. *See id.* (emphasis added). Even were we to reinterpret "solely" in *DiBella* to mean "partially" or "primarily," Doe does not even primarily seek the return of the records since they have already been returned to him.

11

tells us that there doesn't need to be a complaint or indictment filed against someone for there to be "a criminal prosecution *in esse* against" him. 369 U.S. at 131. Rather, it suffices if other "parts of the federal prosecutorial system leading to a criminal trial" have begun. *Id*. This includes "[p]resentations before a United States Commissioner," grand jury proceedings, arrest, detention, and arraignment. *Id*.; *Reg'l Consulting*, 766 F.2d at 872 ("[A] grand jury investigation, without more, constitutes a criminal proceeding *in esse* sufficient to render the denial of a motion for return of property nonappealable . . . ."). Once one of these actions has been taken, "the criminal trial is then fairly in train." *DiBella*, 369 U.S. at 131.[10]

With this understanding, the record as a whole indicates that Doe is the target of a grand jury investigation. The parties admit that, at the time of the execution of the search warrants, Doe's businesses were served grand jury subpoenas. And the record—including Doe's own statement to the district court that he "is currently the target of a federal investigation," J.A. 17, and the nature of the warrant's subject offenses—reflects that the seized materials are tied to the grand jury's investigation of him.[11]

---

[10] A "criminal prosecution *in esse*" under *DiBella* can begin sooner than a "criminal prosecution" for purposes of the Sixth Amendment's right to a speedy trial. The latter does not begin until a person is officially accused of the crime, such as by arrest, indictment, or complaint. *See United States v. MacDonald*, 456 U.S. 1, 6–10 (1982).

[11] Knowing definitively whether Doe is the subject of a grand jury proceeding is difficult because grand jury proceedings are and have long been kept secret. *Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 218 n.9 (1979). Today, grand-jury secrecy is codified in Federal Rule of Criminal Procedure 6(e). The Rule forbids, subject to exceptions, "an attorney for the government," from "disclos[ing] a matter occurring before the grand jury," Fed. R. Crim. P. 6(e)(2)(B), and requires that "[r]ecords, orders, and (Continued)

Even if we were not convinced that there is an ongoing grand jury proceeding against Doe, we would still find that Doe has failed to satisfy his burden of proof under this prong of the *DiBella* test. Remember, the party seeking to invoke appellate jurisdiction must establish that such jurisdiction exists. *Wall Guy, Inc. v. Fed. Deposit Ins. Corp.*, 95 F.4th 862, 868 (4th Cir. 2024). In this case, that requires the *appellant* to establish both prongs of the *DiBella* inquiry. And Doe has provided us with nothing from which we could conclude that the second prong is met.[12]

Accordingly, Doe's motion fails to establish both parts of *DiBella*'s narrow exception to the rule that Rule 41(g) motions are not immediately appealable. We therefore lack jurisdiction under § 1291.[13]

---

subpoenas relating to grand-jury proceedings . . . be kept under seal" long enough to ensure the proceedings remain secret, Fed. R. Crim. P. 6(e)(6).

[12] While proving a negative can be difficult, nothing in the record provided even suggests that the investigation is targeting someone other than the movant. *Cf. United States v. Under Seal* (*In re Search Warrant Issued June 13, 2019*), 942 F.3d 159, 164–65 (4th Cir. 2019) [hereinafter *Balt. Law Firm*] (discussing documents from the search of a law firm collected in connection with an investigation into one partner and a client).

[13] Doe argues that the collateral-order doctrine, not *DiBella*, should dictate whether we have appellate jurisdiction over his appeal. But *DiBella* was essentially a collateral-order holding. True, the Court did not mechanically apply the three-pronged test typically used to identify appealable collateral orders. *See, e.g.*, *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798–99 (1989). Yet *DiBella*'s essential holding is that an order disposing of a pre-indictment suppression motion is a mere "step in the criminal case" rather than an "independent proceeding begetting finality." 369 U.S. at 131 (citation omitted). Orders of this kind are precisely those from which the collateral-order doctrine does not permit appeal. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (explaining that appeal cannot lie from any decisions that "are but steps towards final judgment in which they will merge" and will "affect . . . decision of the merits of th[e] case"); *DiBella*, 369 U.S. at 125–26 (discussing *Cohen*). Therefore, since the Court already (Continued)

### B.    We lack appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

In the alternative, Doe argues that *DiBella* is inapplicable because his case involves the refusal to issue an injunction. Whereas § 1291 only permits appeals from final orders, 28 U.S.C. § 1292(a)(1) gives us jurisdiction over "[i]nterlocutory orders . . . granting, continuing, modifying, refusing or dissolving injunctions." § 1292(a)(1). Doe contends that he satisfies § 1292(a)(1) because his motion before the district sought injunctive relief and the court treated it as one seeking injunctive relief.

We are skeptical that Doe's filter-protocol motion is really a motion for an injunction.[14] But we need not decide whether it is because, even if it were, we have long

---

considered and rejected the possibility of appealing the kind of order involved in Doe's case, we need not independently assess its appealability under the collateral-order doctrine.

[14] Our skepticism stems partly from *DiBella* itself. There, the Court rejected the argument that statutes like § 1292 conferred appellate jurisdiction over then-Rule 41(e) motions because "[e]very statutory exception [to the final judgment rule] is addressed either in terms or by necessary operation solely to civil actions." 369 U.S. at 126. But § 1292(a)(1) is not expressly limited to civil actions, so the Court must have determined that this limit arises "by necessary operation." *Id.* One possible explanation for this is that traditional courts of equity did not typically issue equitable relief, including injunctions, in ongoing criminal cases. *See, e.g.*, *In re Sawyer*, 124 U.S. 200, 210 (1888); 2 Joseph Story, *Commentaries on Equity Jurisprudence, As Administered in England and America* § 893, at 201–02 (13th ed. 1886); F.W. Maitland, *Equity: A Course of Lectures* 324 (A.H. Chaytor & W.J. Whittaker eds., 1936) ("[T]he Chancery having no jurisdiction in criminal matters steered very clear of the field of crime—there was to be no criminal equity."). Thus, *DiBella* could be read as holding that Rule 41 motions are not requests for injunctive relief.

Indeed, *DiBella*'s treatment accords with how suits for the return of property illegally seized or improperly detained functioned historically. At common law, courts of law, not the chancery, determined whether property seized under a valid warrant would be returned to the possessor. 2 Matthew Hale, *Historia Placitorum Coronae: The History of the Pleas of the Crown* 149–52 (1736). Furthermore, though one might be tempted to believe that only courts of equity could issue non-monetary remedies, such as the return of property, "[t]he actual history is less simple." *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 498 (Continued)

held that *DiBella* would still apply. In *Parrish v. United States*, we held that "a ruling of th[e] kind" made under then-Rule 41(e), even if "pitched on equitable jurisdiction," still faces *DiBella*'s test for whether immediate review is available. 376 F.2d 601, 602–03 (4th Cir. 1967); *cf. United States v. Garcia*, 65 F.3d 17, 21 (4th Cir. 1995) (holding that the substantive limitations of then-Rule 41(e) "applie[d] to *all* actions to recover property seized in connection with a criminal investigation" (emphasis added)). *DiBella* thus extends to all motions and suits, couched in law and equity alike, that resemble Rule 41(g) motions. 15B Charles A. Wright et al., *Federal Practice and Procedure* § 3918.4 (2d ed. 2024) ("The interlocutory appeal statute cannot be used to circumvent the policies that deny final judgment appeal."). Since Doe's motion fails *DiBella*'s test, we lack both § 1291 and § 1292(a)(1) jurisdiction over his appeal.

We recognize that this Court once reviewed a denial of a Rule 41(g) motion under § 1292(a)(1) in *Baltimore Law Firm*, 942 F.3d at 169 ("[T]he Law Firm noted this appeal, pursuant to 28 U.S.C. § 1292(a)(1). That jurisdictional provision authorizes appellate review of a district court's decision denying injunctive relief."). But that case didn't

---

(4th Cir. 2023). Replevin and detinue were "almost the only actions, in which the actual specific possession of the identical personal chattel is restored to the proper owner." 3 William Blackstone, *Commentaries* *146; *see also* 1 Joseph Chitty, *A Treatise on Pleading, and Parties to Actions* *121, 162 (Springfield, G. & C. Merriam, 11th Am. ed. 1851). Both were quintessential legal actions. F.W. Maitland, *The Forms of Action at Common Law* 48 (A.H. Chaytor & W.J. Whittaker eds., 1965). And in both England and America, those whose property was unlawfully seized could recover it by filing a replevin action against the government official. Jeffrey S. Sutton, *51 Imperfect Solutions: States and the Making of American Constitutional Law* 43–44 (2018). It thus appears that courts of law, rather than courts of equity, historically dealt with the return of property seized by government officials in criminal matters.

address the issue beyond those two sentences. *NLRB v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 408 (4th Cir. 2022) ("'Drive-by jurisdictional rulings' are not precedential." (quoting *Steel Co.*, 523 U.S. at 91)). And insofar is it conflicts with our decision in *Parrish*, we must "follow the earlier of the conflicting opinions."[15] *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004). Accordingly, we remain bound to hold that *DiBella* forecloses Doe's appeal under § 1292(a)(1).[16]

---

[15] This is not to say, however, that we lacked jurisdiction under § 1291 and *DiBella* in *Baltimore Law Firm*. That question is simply not before us, so we express no opinion on the matter given the different circumstances present in that case. *See, e.g.*, *Balt. Law Firm*, 942 F.3d at 165 (noting that the firm was not the subject of an ongoing criminal investigation).

[16] We take this opportunity to address Doe's concern that, unless we allow for immediate review, his asserted rights will be irretrievably lost. According to Doe, he has a right to object before any material seized by the Government is turned over to the Prosecution Team, so allowing the district court's order to stand would irreparably destroy his attorney-client privilege.

Even assuming Doe's assertions are right, they can't give us jurisdiction. The Supreme Court told us as much in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009). There, the Court recognized that the attorney-client privilege protects litigants from being forced to disclose privileged material during discovery. *Id.* at 109. As a result, a discovery order disrespecting the privilege, in a sense, irreparably destroys it. *Id.* But this recognition didn't mean the Court had jurisdiction to review such an order on interlocutory appeal. In contrast, the Court explicitly held that "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege." *Id.* Importantly, this leaves open the possibility that a problematic discovery order may *never* be reviewed. For if the case is settled or the party contesting the discovery order prevails and his opponent doesn't (or, in the criminal context, can't) appeal, then the discovery order will never be reviewed.

Doe differentiates *Mohawk* by pointing to the alternative remedies in that case that would have permitted immediate appeal that are unavailable here, such as defiance of the disclosure order or appeal under § 1292(b). *See id.* at 110–11. But at least one of the alternatives for immediate relief mentioned in *Mohawk*—mandamus—would be available in cases like Doe's. *See id.* at 111. Even so, *Mohawk*'s discussion of alternate avenues for interlocutory appeal only supplements its prior conclusion that orders infringing on the
(Continued)

\*          \*          \*

A federal court's power extends no further than the Constitution and federal statutes allow. And the Supreme Court has told us that federal law doesn't allow immediate appeal of a Rule 41(g) order unless the motion passes *DiBella*'s two-part test. Doe's motion fails both parts. So we lack appellate jurisdiction, and Doe's appeal must be

*DISMISSED.*

---

attorney-client privilege are not immediately appealable just because they so infringe. *Id.* at 109. Post-judgment review suffices. *Id.* ("Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence.").

17

QUATTLEBAUM, Circuit Judge, concurring:

The attorney-client privilege and the work-product doctrine go to the heart of our justice system and this appeal. John Doe, the target of a criminal investigation, asserts that a district court violated those privileges by permitting the government to review materials seized from him pursuant to a search warrant. But to address these issues, we must first decide whether we have appellate jurisdiction to hear his interlocutory challenge to the district court order authorizing the government's protocol for screening potentially privileged information. The majority holds that we do not. Ultimately, I agree. However, I write separately because I arrive at that destination from a different path and because I fear our conclusion today, and the precedent that requires that conclusion, undermines the attorney-client privilege and the work-product doctrine.

I.

The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The privilege "empowers a client—as the privilege holder—to refuse to disclose and to prevent any other person from disclosing confidential communications between him and his attorney." *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 173 (4th Cir. 2019), as amended (Oct. 31, 2019) (cleaned up) [hereinafter *Balt. Law Firm*]. "The purpose of the attorney-client privilege is to ensure 'full and frank communication' between a client and his lawyer and 'thereby promote broader public interests in the observance of law and administration of justice.'" *Id.* (quoting *Upjohn Co.*, 449 U.S. at 389). And "lawyers are

18

obliged to protect the attorney-client privilege to the maximum possible extent on behalf of their clients." *Id.*

The work-product doctrine shields materials prepared in anticipation of litigation. Federal rules of both civil and criminal procedure incorporate this principle. *See* Fed. R. Civ. P. 26(b)(3); Fed. R. Crim. P. 16(a)(2), (b)(2). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). And while work product may often be created by an attorney, "the concept of 'work product' is not confined to information or materials gathered or assembled by a lawyer." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1977). "[A]bsent strong protection for work product, '[i]nefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial,' all to the detriment of clients and 'the cause of justice.'" *Balt. Law Firm*, 942 F.3d at 173 (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).

Doe claims that his electronic devices seized by the government contain privileged information. The government doesn't deny that assertion. Instead, it responds that Doe's privileges can be protected by the protocol it proposed, which the district court approved, over Doe's objection. Under that protocol, the government's "Filter Team," which would be walled off from the government's "Prosecution Team," would separate information into two groups: (i) information that is potentially protected and (ii) information that is not. To make this first cut, the Filter Team would run "a comprehensive list of privilege-related search terms over the entire population of records." J.A. 60. For the search terms to be

19

effective, though, the Filter Team would need Doe to provide it with certain identifying information. If any record returns a hit on a search term, the record, along with any attachments, would be sequestered and designated as potentially protected. The Filter Team would hand the remaining materials over to the Prosecution Team. At that point, the Prosecution Team would be free to review the documents and use them in its prosecutorial efforts.

The Filter Team then would review materials that were flagged as potentially protected based on a search term hit. In this review, the Filter Team would determine whether any potentially privileged materials flagged are *not* subject to a claim of privilege. If the Filter Team were to determine that something flagged is not privileged, it would notify Doe and proceed to release it to the Prosecution Team. However, if Doe were to object and not agree to a redaction, the Filter Team would submit the material under seal to the court for a determination of whether the material is protected.

As he did below, Doe argues on appeal that the protocol violates his constitutional rights. First, according to Doe, the protocol puts him in a lose/lose situation. To protect his privileges, he would have to cooperate in his own prosecution by providing search terms to the Filter Team. Doe contends he should not have to assist the government in their investigation and prosecution of him. And he further argues that providing information to the government might reveal self-incriminating evidence. All this, he says, violates his Fifth Amendment rights. In order to protect his Fifth Amendment rights, he can refuse to provide search terms. But that potentially forfeits his privileges, which emanate from the Sixth Amendment. *See Balt. Law Firm*, 942 F.3d at 174 ("[T]he attorney-client privilege

20

and the work-product doctrine jointly support the Sixth Amendment's guarantee of effective assistance of counsel."). According to Doe, either way he turns, the protocol tramples on his rights.

Second, Doe claims the protocol does little to address the problem of false negatives. Though any document returning a hit using search terms would be sequestered for further review, recall that all other documents would be immediately handed to the Prosecution Team. So, nothing prevents documents that are privileged but fail to be flagged by the search terms from being provided immediately to the prosecution. And nothing in the protocol alerts Doe that a false negative has been handed over.

Doe maintains these problems could be avoided by handling privileges the way they are handled in most every other situation. Before the adverse party—here the government—could review his materials, Doe—as the owner of the materials and holder of the privileges—would have a chance to review them and object to turning over any materials that he claims are privileged. If the government objects to his claim of privilege, and the parties are unable to resolve the dispute, the court could review the document and make a privilege determination. In order to minimize delay, Doe agreed to review the materials on a rolling basis. And he does not object to securing the information in a format that prevents any alteration or destruction of the materials. Finally, to the extent there is some delay in the government's prosecution, Doe responds that delay would be but a small price to pay to safeguard the fundamental protections provided by the attorney-client privilege and the work-product doctrine.

21

II.

But we can consider Doe's challenges based on these important issues only if we have appellate jurisdiction to review the district court's order. And I agree with the majority that if *DiBella v. United States*, 369 U.S. 121 (1962), applies to Doe's claims, we lack jurisdiction. As Judge Richardson explains, Doe's claims and the district court order do not satisfy either of the two requirements to avoid *DiBella*'s jurisdictional bar to motions to suppress. I also agree with the majority that under *Parrish v. United States*, 376 F.2d 601, 602–03 (4th Cir. 1967), couching a request for relief over which we would not have jurisdiction as a motion for an injunction does not create 28 U.S.C. § 1292(a)(1) jurisdiction. Otherwise, almost any non-final decision could be reframed as a motion for an injunction permitting an end-around our final judgment rule. *See United States v. Carrington*, 91 F.4th 252, 264 (4th Cir. 2024).[1] Despite that agreement, I write separately to express my skepticism about one issue and my concern about another.

A.

First my skepticism. The majority concludes that *DiBella* applies to the denial of a Rule 41(g) motion challenging a protocol for handling material potentially containing

---

[1] While I concur with the majority, I empathize with Doe and his counsel, particularly in their attempt to appeal an injunction in connection with a Rule 41(g) motion. Just a few years ago, we found that we *did* have jurisdiction from a denial of an injunction in that posture. *See Balt. Law Firm*, 942 F.3d at 169 ("Later that day, the Law Firm noted this appeal, pursuant to 28 U.S.C. § 1292(a)(1). That jurisdictional provision authorizes appellate review of a district court's decision denying injunctive relief."). And so did another court. *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1244–47 (11th Cir. 2021).

privileged information just as *DiBella* applies to the denial of a motion to suppress under the former Rule 41(e). To the majority, this is true because, like a motion to suppress, Doe's motion is likely part of a criminal case, seeks to prevent the government from using the evidence and could be used as a delay tactic. Maj. Op. at 7–8. But does *DiBella* really apply here? While I acknowledge that there are similarities between Doe's motion and a suppression motion, there are also differences. Denying a motion to suppress may affect what evidence can be introduced at trial against a defendant. Denying a challenge to a protocol allegedly insufficient to protect a criminal defendant's potentially privileged information may affect the fundamental fairness of the entire trial. Notably, without ever having to introduce privileged information at trial, the government could review and use that information to shape a litigation strategy with no one else the wiser. *See In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006) (recognizing an "obvious flaw" in a filter protocol because "the government's fox is left in charge of the appellants' henhouse, and may err by neglect or malice, as well as by honest differences of opinion"). Imagine one team in the Super Bowl has the other's playbook. The team with the playbook could devise its offensive and defensive schemes much more effectively with the benefit of the other team's strategies. More insidious still, improper access to the other team's playbook could go undetected.

There are other differences. With the denial of a motion to suppress, at least a judge has had the opportunity to consider and decide the issue, and most importantly, to develop a record for us to potentially review later. But in Doe's challenge to the protocol, the issue

23

may not be as neatly teed up.[2] To be sure, a record might be proper for review if the government identified the potentially privileged documents and the parties disputed whether they were in fact privileged. In that situation, we'd have a judicial decision, as we would on a motion to suppress. But my concern is when that process does not play out. And the protocol approved here makes that a real possibility.

Finally, to challenge the introduction of evidence, a criminal defendant need not give up any rights on their way to file a motion to suppress. That might not be the case when challenging a protocol like this one. Consider work product doctrine—materials prepared in anticipation of litigation that need not go to or from an attorney. Under the protocol, Doe is asked to provide relevant search terms so that the filter team can flag such documents. But to properly flag them, a defendant may have to identify terms that might be self-incriminating or might themselves reveal some or all of the privileged information. As a result, Doe is caught between the proverbial rock and a hard place.[3] Either give up potentially self-incriminating work product or risk the government reviewing work product and using it to the government's advantage. Maybe *DiBella* applies here despite these

---

[2] The absence of a ruling on privilege under the filter protocol might also limit appellate review. Our answer today for Doe seems to be "wait and appeal later." But if Doe suspects that the government has improperly and covertly utilized his privileged information in the lead up to a hypothetical trial and conviction, what would a later appeal look like? Such an inquiry would likely require discovery, depositions, and other fact finding, all things antithetical to a typical appeal. That might be part of why we have previously said that the government's review of privileged materials "cannot be undone." *Balt. Law Firm*, 942 F.3d at 175.

[3] *See Richardson v. Clarke*, 52 F.4th 614, 624 n.11 (4th Cir. 2022) (explaining the origins of that storied phrase).

24

differences. But to repeat, I am skeptical. The risks and inability to later remedy them seem much greater.

B.

Now my concern. Even if *DiBella* does not apply, there must be a proper vehicle for us to consider Doe's interlocutory challenge. And considering *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), I am not at all sure such a vehicle exists. As the majority notes, *Mohawk* explained that "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege." *Id.* at 109. True, *Mohawk* offered the collateral order doctrine, certification under 28 U.S.C. § 1292(b) and writs of mandamus as possible avenues for interlocutory review. But I am not persuaded by Doe's collateral order doctrine argument. And § 1292(b) and writs of mandamus seem like awfully steep hills to climb. What's more, the other option *Mohawk* identified—defiance of an order of production leading to a sanction or a contempt finding that would permit appeal—is unavailable here. So, ironically, at least in this procedural posture, a criminal target like Doe—whose liberty is at risk—has fewer rights than a civil litigant fighting over money. And tilting the scales further, the government submits that if the district court had adopted Doe's protocol, it could have appealed.

Regrettably, under current law, I see no vehicle permitting interlocutory review of Doe's challenges to the district court's order. So, I must concur. But make no mistake, protocols like this one run the risk of hollowing out both the attorney-client privilege and the work-product doctrine. Mitigating that risk, in my view, would be worth the costs of a possible delay in Doe's criminal investigation or any inconvenience of piecemeal litigation.

25

Thus, while binding precedent requires me to concur, I would respectfully encourage the Supreme Court to consider loosening the reins of *Mohawk* to permit interlocutory review of privilege-based challenges to screening protocols and urge district courts to consider these issues before ordering such protocols in similar cases.